# United States Court of Appeals
## For the First Circuit

No. 03-2052
No. 04-1383

IN RE:  SPECIAL PROCEEDINGS.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Boudin, Chief Judge,

Lipez and Howard, Circuit Judges.

Jonathan M. Albano with whom Bingham McCutchen LLP, William P. Robinson III, Edwards & Angell, LLP, Susan E. Weiner, Brande M. Stellings and National Broadcasting Company, Inc. were on brief for appellant-third-party witness James Taricani.
Laura R. Handman, Jeffrey L. Fisher, Davis Wright Tremaine LLP, Henry S. Hoberman, ABC, Inc., David A. Schulz, The Associated Press, Levine Sullivan Koch & Schulz, L.L.P., Jonathan S. Piper, Blethen Maine Newspapers, Preti Flaherty Beliveau Pachios & Haley LLC, Susanna M. Lowy, CBS Broadcasting Inc., David C. Vigilante, Cable News Network LP, LLLP, Stuart D. Karle, Dow Jones & Company, Inc., Barbara W. Wall, Gannett Company, Inc., Eve B. Burton, Jonathan Donnellan, The Hearst Corporation, Gordon Yamate, Knight-Ridder, Inc., Kenneth M. Vittor, William Farley, The McGraw-Hill Companies, Inc., George Freeman, The New York Times Company, Rene P. Milam, Newspaper Association of America, Stephen Fuzesi, Jr., Newsweek, Inc., Jan F. Constantine, NYP Holdings, Inc., Russell F. Coleman, The Providence Journal Company, Belo Corp., Lucy A. Dalglish, The Reporters Committee for Freedom of the Press, Robin Bierstedt, Time Inc., Stephanie S. Abrutyn, Karlene Goller, Tribune Company, Eric N. Lieberman and WP Company LLC, d/b/a The Washington Post, on brief for ABC, Inc., The Associated Press, Blethen Maine Newspapers, CBS Broadcasting Inc., Cable News Network LP, LLLP, Dow Jones & Company, Inc., Gannett Company, Inc., Globe Newspaper Company, Inc., The Hearst Corporation, Knight-Ridder, Inc., The

McGraw-Hill Companies, Inc., The New York Times Company, Newspaper Association of America, Newsweek, Inc., NYP Holdings, Inc., The Providence Journal Company, The Reporters Committee for Freedom of the Press, Time Inc., Tribune Company, and The WP Company LLC, d/b/a The Washington Post, Amici Curiae.

Marc DeSisto with whom DeSisto Law, Joan McPhee, William S. Eggeling and Ropes & Gray LLP were on brief for appellee United States of America and the Special Prosecutor.

———————————

June 21, 2004

———————————

**BOUDIN**, <u>Chief Judge</u>.  This appeal is an outgrowth of two federal corruption cases involving city officials in Providence, Rhode Island.  One set of indictments--the <u>Glancy</u> case--named tax officials Joseph Pannone, David Ead, and Rosemary Glancy.  <u>See</u> <u>In re Special Proceedings</u>, 291 F. Supp. 2d 44, 47 (D.R.I. 2003).  The second indictment--the <u>Corrente</u> case--also named Pannone in addition to Frank Corrente, who was Providence Mayor Vincent A. Cianci, Jr.'s administrative director; a superseding indictment handed down in the <u>Corrente</u> case on April 2, 2001, added the mayor and three other defendants.  <u>Id.</u>

On August 8, 2000, while Corrente was awaiting trial and the grand jury investigation of other, later named defendants was continuing, the district court entered a protective order prohibiting counsel in the <u>Corrente</u> case from disclosing the contents of audio and video surveillance tapes that had been made by law enforcement officials and furnished to defense counsel during discovery.  The aim was to safeguard the on-going grand jury investigation of Cianci and to avoid pretrial publicity that could prejudice the defendants' right to a fair trial.  <u>In re Special Proceedings</u>, 291 F. Supp. 2d at 47.

The order, assented to by both sides, read:

> Upon Motion of the government, and with the consent of all parties, and for good cause having been shown, it is hereby ORDERED that the consensual audio and video recordings ("Recordings") discoverable in the above-captioned matter shall be subject to the

-3-

> following protective order. Counsel are
> hereby ordered not to disclose the contents of
> said Recordings to any persons other than the
> defendant or those deemed essential by counsel
> for the preparation of their client's defense,
> or in the case of the government, in the
> preparation for trial or as part of any
> continuing investigation. All motions or
> other filings which cite any portion of the
> Recordings other than by reference shall be
> filed under seal until further order of this
> Court. Nothing in this order shall prevent
> any party from moving for relief from this
> order for good cause shown.

The order was entered by Judge Lagueux. On April 10, 2001, just after the handing down of the superseding indictment, the case was transferred to Chief Judge Torres.

On February 1, 2001, while the grand jury investigation of Cianci was still in progress, James Taricani, an investigative television reporter, and his employer WJAR Channel 10, a Providence television station owned and operated by NBC, aired one of the videotapes. In re Special Proceedings, 291 F. Supp. 2d at 46-47. The tape in question showed a government witness handing Corrente an envelope that allegedly contained a cash bribe for Corrente and/or Cianci. Id. at 47. Who leaked the tape was not disclosed: Taricani said he had given the source a pledge of confidentiality.

Defendants then asked the district court to investigate whether any participant in the case had violated the protective order by leaking the tape to Taricani and, if so, to impose appropriate sanctions. On May 31, 2001, the district court issued an order stating in part:

-4-

> The release and/or disclosure of the contents of the aforesaid videotape is a serious matter. Such acts, if continued, could threaten the rights of all parties to a fair trial. In addition, the release and/or disclosure appear to have violated both the confidentiality of Grand Jury proceedings and the August 8, 2000, protective order. If so, such release and/or disclosure may constitute criminal contempt. See, Fed. R. Crim. P. R. 6(e).

The order continued by explaining that such a matter would ordinarily be referred to the Department of Justice for investigation; but because government prosecutors were involved in the pending case against Corrente and others, the court decided to appoint Marc DeSisto, a private attorney (who had formerly been a prosecutor), to act as special prosecutor to investigate the disclosure and to prosecute for criminal contempt anyone against whom adequate evidence was uncovered.

After interviewing approximately fourteen individuals and deposing several, and "[h]aving exhausted what he believed to be all other means of obtaining the information necessary to conclude his investigation," DeSisto sought and received the issuance of a subpoena by the court requiring Taricani to appear for a deposition. In re Special Proceedings, 291 F. Supp. 2d at 47. At the deposition, Taricani refused to answer any questions regarding the identity of the person from whom he had received the tape, asserting a "newsman's privilege" not to reveal confidential sources. Id. at 47-48. DeSisto then filed a motion to compel,

-5-

which the district court granted after a hearing on October 2, 2003.  Id. at 47-48, 60.

Following an abortive appeal from the order compelling testimony, which this court dismissed as premature, Taricani appeared at a February 13, 2004, deposition.  Again he refused to answer questions about his source for the tape.  After a hearing, the district court on March 16, 2004, found Taricani in civil contempt, gave him until noon the following day to purge himself of the contempt order by answering the questions posed by the special prosecutor, and ordered him to pay a sum of $1,000 a day for each day thereafter until he complied.

Taricani then sought review, and a stay, of the civil contempt order.  We granted a stay of the order pending expedited review; our stay order expressed doubts about Taricani's prospects (in light of Branzburg v. Hayes, 408 U.S. 665 (1972)), but said that the claimed threat to First Amendment interests justified a stay, given our expedition of the appeal and the lack of demonstrable harm from a brief further delay in the investigation.

On appeal, Taricani first argues that because the district court failed to ask the government to pursue the criminal proceeding, the appointment of the special prosecutor violated Fed. R. Crim. P. 42(a)(2), the Supreme Court decision that prompted it, Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787

-6-

(1987), and separation of powers principles said to underlie the Young decision.

Young overturned a lower court decision appointing a self-interested special prosecutor to pursue a contempt proceeding. Young, 481 U.S. at 802, 814. However, the Young decision also said that the rationale for a court to appoint its own prosecutor was "necessity" and therefore "a court ordinarily should first request [the government] to prosecute contempt actions, and should appoint a private prosecutor only if that request is denied." Id. at 801. Rule 42 was amended in 2002 ("to reflect the holding in Young," advisory committee note) by adding the following language:

> Appointing a Prosecutor. The court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney. If the government declines the request, the court must appoint another attorney to prosecute the contempt.

Fed. R. Crim. P. 42(a)(2).

Taricani, of course, has been held in civil contempt--not criminal contempt governed by Rule 42--but the civil contempt arose out of the investigation by, and at the request of, DeSisto who was appointed to conduct a criminal contempt investigation governed by Rule 42 and Young. Taricani's view is that the supposed Rule 42/Young violation is so fundamental that it undermines the district court's authority to compel by civil contempt answers to

-7-

questions propounded by such a prosecutor in a criminal proceeding even if the court wants them answered.

Some case law suggests that Taricani may not be entitled to resist a court's otherwise lawful order to answer by pointing to some antecedent defect in the proceedings. See United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 76-77 (1988); Blair v. United States, 250 U.S. 273, 282 (1919). And, despite Taricani's claim to the contrary, no defect in the special prosecutor's commission affects the "subject matter jurisdiction" of the district court over a proceeding to detect and punish violations of its orders.

Nevertheless, Taricani has a direct and immediate interest in whether he is held in civil contempt and the alleged flaw could be judicially redressed, so a case or controversy exists within the meaning of Article III. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 102-03 (1998); Mangual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003). Whether Taricani can contest the prosecutor's authority is primarily a matter of prudential standing doctrine--not Article III, cf. Secretary of State of Md. v. Joseph H. Munson Co., Inc., 467 U.S. 947, 955 (1984), and DeSisto's authority vel non should be resolved.

Young says that the government should "ordinarily" be asked to handle contempt prosecutions; Rule 42(a)(2), which the Supreme Court approved as a gloss on Young, says that it must be

asked to do so "unless the interest of justice requires the appointment of another attorney." Fed. R. Crim. P. 42(a)(2). So the district court was entitled to appoint DeSisto without asking the government to handle the case if the district court permissibly found that "the interest of justice require[d]" it. The district court made such a finding and the question before us is whether its finding should be upheld.

"Interest of justice" is a general and widely used phrase. E.g., Fed. R. Crim. P. 21(b), 33(a); Fed. R. Civ. P. 26(d); 28 U.S.C. §§ 1404(a), 1631 (2000). Application of such a legal standard to known facts presents an issue of law, but one usually inviting deferential review.[1] This is so because of the standard's generality, the range of circumstances to which it must be applied, and the district court's familiarity with the unique facts of a case. Cf. United States v. Roberts, 978 F.2d 17, 21-22 (1st Cir. 1992).

Taricani suggests that because Young is allegedly constitutional doctrine, no deference should be given to the district court's ruling and we should engage in de novo review. But Young was not expressed as a constitutional requirement; the decision imposed a prudential limitation explicitly grounded in the court's supervisory power. Young, 481 U.S. at 790. Thus we need

[1]Stewart Org., Inc., 487 U.S. at 29-30; In re Middlesex Power Equipment & Marine, Inc., 292 F.3d 61, 69 (1st Cir. 2002); Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987); In re Globe Newspaper Co., 920 F.2d 88, 93 (1st Cir. 1990).

not consider whether <u>de novo</u> review is required for all law-application issues involving constitutional issues. <u>Compare</u> <u>United States</u> v. <u>Frederick</u>, 182 F.3d 496, 499 (7th Cir. 1999) (Posner, C.J.), <u>cert. denied</u>, 528 U.S. 1154 (2000), <u>with</u> <u>id.</u> at 503-05 (Wood, J., concurring).

On the merits, the district judge had multiple reasons for concern about having the government handle the matter. The two corruption cases, yet to be tried, were the subject of much public attention. If the investigation focused on the defense attorneys--one possible source of any leak--government attorneys might seem to be harassing an adversary. <u>See</u> <u>FTC</u> v. <u>Am. Nat. Cellular</u>, 868 F.2d 315, 319 (9th Cir. 1989). Further, as the prosecution was also a possible source of the leak, some might think that the government could not be fully trusted to pursue its own lawyers.[2]

Taricani says that the Department of Justice has procedures that would allow government prosecutors from outside Rhode Island to take over if that were needed (citing <u>United States Attorney's Manual</u>, §§ 3-2.170; 3-2.171; 3-2.220 (2000 Supp.)). This sometimes resolves any actual conflict of interest, <u>see</u> <u>United States</u> v. <u>Vlahos</u>, 33 F.3d 758, 763 n.5 (7th Cir. 1994); <u>cf.</u> <u>United States</u> v. <u>Caggiano</u>, 660 F.2d 184, 190-91 (6th Cir. 1981), <u>cert.</u>

---

[2]Indeed, on April 9, 2001, the lead prosecutor for the government notified the district court that he had himself violated the terms of the protective order by playing for three other persons not necessary to the case a portion of the same videotape at issue in this case. <u>See</u> <u>In re Providence Journal Co., Inc.</u>, 293 F.3d 1, 5 (1st Cir. 2002).

denied, 454 U.S. 1149 (1982), but this solution would not necessarily have banished the public impression of a conflict in this case. Young itself was importantly concerned with the public impression left by the choice of prosecutor. 581 U.S. at 811.

We would not ourselves have been troubled if the district court had tendered the contempt investigation to the Department of Justice on the understanding that it would be handled by another federal prosecutor's office rather than by the Rhode Island U.S. Attorney. But the district court was far more familiar than an appellate court with the conditions in Rhode Island and the extent of the surrounding publicity. Its decision that the interest of justice required a special prosecutor was not unreasonable or otherwise improper.

Taricani argues that the district court's decision to appoint a special counsel was "prejudicial" for two reasons: because under regulations of the Attorney General, a government prosecutor allegedly could not have subpoenaed Taricani to testify and because a government prosecutor, proceeding through a grand jury, would have been subject to greater checks than a special prosecutor. Having concluded that it was not "error" to appoint a special prosecutor, the question whether any error was prejudicial is beside the point.

So far as Taricani is arguing that the Attorney General's regulations should be imposed on DeSisto by the courts, the short

answer is that a government prosecutor could have subpoenaed Taricani consistent with the regulations. These require that reasonable grounds exist to believe that a crime has occurred and that prior efforts have been made by the prosecutor to get the necessary information from non-media sources. 28 C.F.R. §§ 50.10(b),(f)(1)-(3) (2003). The regulations are not themselves binding on the special prosecutor;[3] but, as the same requirements could be urged as a matter of judicial discretion, we explain briefly why they would not affect the outcome in this case.

First, Taricani says that there is no firm proof that anyone violated the protective order, pointing out that the order was directed to "counsel" and that other persons may have had access to the tapes. This may assume too narrow a reach for the protective order, but it does not matter: there is certainly a reasonable possibility that counsel, or someone in league with counsel, leaked the tape. DeSisto is entitled to investigate the reasonable possibility of criminal contempt; certainty is not required.

---

[3]The regulation states that "the following guidelines shall be adhered to by all members of the Justice Department in all cases," 28 C.F.R. § 50.10 (2003), but a special prosecutor is not a member of the Justice Department. The regulations also say that "[t]he principles set forth in this section are not intended to create or recognize any legally enforceable right in any person." Id. § 50.10(n). Case law points in the same direction, see In re Shain, 978 F.2d 850, 853-54 (4th Cir. 1992); cf. Yongo v. INS, 355 F.3d 27, 31 (1st Cir. 2004).

Second, Taricani argues that there are no findings by the district court that DeSisto exhausted other possible sources of information. Yet, the special prosecutor described to the district court his prior efforts to unearth the leaker without the reporter's help, stating that he had exhausted realistic alternatives. In re Special Proceedings, 291 F. Supp. 2d at 47. Taricani does not identify as a likely source of the information sought anyone beyond the fourteen witnesses interviewed or deposed.

As for the lack of checks on the special prosecutor, we agree that--special circumstances aside--the optimal arrangement for criminal prosecution is for a government lawyer to take the lead. But special prosecutors drawn from outside the executive branch have an established history and more recent judicial sanction, Young, 481 U.S. at 794-802; and the concern about an appearance of conflict of interest made the case special. Judicial oversight is available if a prosecutor oversteps the bounds.

Taricani's principal substantive argument on appeal is that it violates the First Amendment to hold him in civil contempt for refusing to answer questions as to who leaked the taped material to him. When he refused to answer, the civil contempt citation followed. The First Amendment argument is an uphill one in light of the Supreme Court's Branzburg decision, but it has several facets and we take them in order.

In *Branzburg*, the Supreme Court flatly rejected any notion of a general-purpose reporter's privilege for confidential sources, whether by virtue of the First Amendment or of a newly hewn common law privilege. *Id.* 408 U.S. at 682, 690-91, 701. The Court stressed *inter alia* the importance of criminal investigations, the usual obligation of citizens to provide evidence, and the lack of proof that news-gathering required such a privilege. *Id.* at 685-707. Justice Powell, who wrote separately but joined in the majority opinion as the necessary fifth vote, also rejected any general-purpose privilege. *Id.* at 709-10.

*Branzburg* governs in this case even though we are dealing with a special prosecutor rather than a grand jury. Taricani says that there ought to be a stiffer test for special prosecutors but the considerations bearing on privilege are the same in both cases. This is the view of all three circuits that have recently dealt with variants of the problem.[4] A now elderly Ninth Circuit case deemed *Branzburg* to be limited to grand juries, *Farr* v. *Pitchess*, 522 F.2d 464, 468 (9th Cir. 1975), but reached the same result on a balancing test.

What *Branzburg* left open was the prospect that in certain situations--*e.g.*, a showing of bad faith purpose to harass--First Amendment protections might be invoked by the reporter. 408 U.S.

---

[4]*McKevitt* v. *Pallasch*, 339 F.3d 530, 531, 533 (7th Cir. 2003); *United States* v. *Smith*, 135 F.3d 963, 971 (5th Cir. 1998); *In Re Shain*, 978 F.2d 850, 852 (4th Cir. 1992).

at 707-08.  Lower court cases in this circuit[5] and elsewhere[6] have underscored this possibility of limits although often finding nothing extraordinary about their own facts.  One distinguished judge has questioned whether Branzburg now offers protection much beyond what ordinary relevance and reasonableness requirements would demand, see McKevitt, 339 F.3d at 532 (Posner, J.), but our own cases are in principle somewhat more protective.

The three leading cases in this circuit require "heightened sensitivity" to First Amendment concerns and invite a "balancing" of considerations (at least in situations distinct from Branzburg).  Cusumano, 162 F.3d 716-17; LaRouche, 841 F.2d at 1182-83; Bruno, 633 F.2d at 596-99.  In substance, these cases suggest that the disclosure of a reporter's confidential sources may not be compelled unless directly relevant to a nonfrivolous claim or inquiry undertaken in good faith; and disclosure may be denied where the same information is readily available from a less sensitive source.  See Cusumano, 162 F.3d at 716-17; LaRouche, 841 F.2d at 1180; Bruno, 162 F.3d at 597-98.

---

[5]Cusumano v. Microsoft Corp., 162 F.3d 708 (1st Cir. 1998); United States v. LaRouche Campaign, 841 F.2d 1176 (1st Cir. 1988); Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583 (1st Cir. 1980); see also In re Grand Jury Proceedings Involving Vickers, 38 F. Supp. 2d 159, 162 n.3 (D.N.H. 1998).

[6]E.g., United States v. Smith, 135 F.3d at 969; In re Grand Jury Proceedings, 5 F.3d 397, 400-02 (9th Cir. 1993), cert. denied, 510 U.S. 1041 (1994); In Re Shain, 978 F.2d at 852-53; In re Grand Jury Proceedings, 810 F.2d 580, 586 (6th Cir. 1987).

How far these constraints may be constitutional requirements (as opposed to prudential considerations) is unsettled; the Supreme Court twice rejected any automatic requirement that non-confidential sources be exhausted. Univ. of Pa. v. EEOC, 493 U.S. 182, 201 (1990); Branzburg, 408 U.S. at 701-02. In all events, in this case there is no doubt that the request to Taricani was for information highly relevant to a good faith criminal investigation; and, as already noted, that reasonable efforts were made to obtain the information elsewhere.

Taricani next argues that the original August 8, 2000, protective order, whose apparent violation spurred the special prosecutor's inquiry, is itself unlawful for lack of specific findings to show need. The original protective order, consented to by both sides, did not contain explicit findings of need, but the potential of the tapes to taint prospective jurors was so obvious that it did not need to be spelled out. It is enough to note that the tape broadcast by Taricani could be interpreted as recording an actual pay-off implicating high level officials.[7]

---

[7]We bypass the question whether Taricani has standing to contest an order that did not apply to him, see In re Globe Newspaper Co., 729 F.2d 47, 50 & n.2 (1st Cir. 1984)(doubting without deciding); Application of Dow Jones & Co., Inc., 842 F.2d 603, 606-07 (2d Cir.), cert. denied, 488 U.S. 946 (1988), and the separate question, noted above, whether the defects alleged by Taricani are of a sort that would permit him to disobey the order. See United States Catholic Conference, 487 U.S. at 76-77; Blair, 250 U.S. at 282.

Alternatively, Taricani complains that the original protective order was <u>too narrow</u> (and therefore pointless and invalid) because it was directed only to counsel on both sides. Others, says Taricani, would also have had access to the tapes (<u>e.g.</u>, the agents who originally made the tapes). To us it is enough that the protective order--entered in connection with the turning over of the tapes to defense counsel--even-handedly prohibited disclosure by counsel on both sides and dealt with obvious sources of disclosure.

Next, Taricani complains that the $1,000-a-day fine threatened is "punitive"; but its obvious purpose is to compel compliance and far more severe fines for civil contempt have been upheld for this purpose. <u>See</u> <u>Int'l Union, United Mine Workers</u> v. <u>Bagwell</u>, 512 U.S. 821, 830 (1994); <u>United States</u> v. <u>Mongelli</u>, 2 F.3d 29, 30 (2d Cir. 1993); <u>see also</u> <u>In re Power Recovery Sys., Inc.</u>, 950 F.2d 798, 801-02 (1st Cir. 1991).

Finally, we turn to an ancillary matter. In September 2002, Taricani and his television station WJAR moved to unseal all documents filed with the court in the special prosecutor's investigation and to provide Taricani with a copy of his deposition transcript. In June 2003, the district court denied the motion, save for one document, saying that

> the remaining documents filed in this matter
> relate to the on-going investigation being
> conducted by the special prosecutor; and,
> since publicizing those documents is likely to

-17-

compromise the investigation by revealing details that could cause the responsible party or parties to conceal evidence, seek to discourage or influence witnesses, or otherwise impede the investigation, those remaining documents will remain sealed.

Taricani and the station appealed from this order. While this appeal was pending, the district court on March 11, 2004, unsealed all but four of the records in question. In its new order, the court said that so far as the sealed documents related to the questions put to Taricani and his refusal to answer, the matter had already become public so there was no longer any purpose served by keeping confidential the documents relating to that issue.

This leaves at issue on appeal the four remaining documents still under seal and Taricani's deposition transcript. The four documents relate to the special prosecutor's ongoing investigation. As to the deposition transcript, it appears from his brief that the district court was willing to allow Taricani copies of his deposition on condition that he and his lawyer agree to keep the transcripts confidential, but Taricani is not satisfied with this solution.

Taricani and WJAR argue for access to the deposition transcript and the four remaining sealed documents on the grounds that "[t]he public has a constitutional and common law right of access to court records." Although judicial proceedings are presumptively public, see Richmond Newspapers, Inc. v. Virginia

448 U.S. 555, 580 (1980); <u>In re Boston Herald, Inc.</u>, 321 F.3d 174, 182-83 (1st Cir. 2003), there are exceptions and one of the best settled is that there is no general right of public access to the proceedings of a grand jury or to documents generated by those proceedings.[8]

Here the documents have been sealed as part of the investigation by a special prosecutor and not a grand jury investigation. Yet the principal reasons for grand jury secrecy-- to protect the innocent against unfair publicity and to prevent tampering or escape by targets, <u>Douglas Oil Co.</u> v. <u>Petrol Stops Northwest</u>, 441 U.S. 211, 219 n.10 (1979)--apply with equal force here. What the special prosecutor is currently doing is sufficiently like what a grand jury would do to make the analogy decisive.

Taricani may be arguing that <u>as a witness</u> he has an elevated right to copies of his own deposition transcript. However, in this circuit "a grand jury witness has no general right to transcripts of his testimony." <u>In re Bianchi</u>, 542 F.2d 98, 100 (1st Cir. 1976). Similarly, a majority of circuits hold that a non-defendant witness seeking access to his own deposition transcript must make "a strong showing of particularized need" for

_____

[8]Fed. R. Crim. P. 6(e); <u>In re Boston Herald, Inc.</u>, 321 F.3d at 183; <u>see</u> <u>Press-Enterprise Co.</u> v. <u>Superior Court</u>, 478 U.S. 1, 9 (1986); <u>Globe Newspaper Co.</u> v. <u>Pokaski</u>, 868 F.2d 497, 509 (1st Cir. 1989); <u>accord</u> <u>In re Motions of Dow Jones & Co.</u>, 142 F.3d 496, 499-503 (D.C. Cir.), <u>cert. denied</u>, 525 U.S. 820 (1998); <u>United States</u> v. <u>Smith</u>, 123 F.3d 140, 143, 149 (3d Cir. 1997).

such disclosure. <u>In re Grand Jury Subpoena</u>, 72 F.3d 271, 274 (2d Cir. 1995)(quoting <u>United States</u> v. <u>Sells Eng'g, Inc.</u>, 463 U.S. 418, 443 (1983)). A few circuits take a contrary view, <u>id.</u> at 275 (collecting cases), but are at odds with <u>Bianchi</u>.

In this case Taricani has given no reason, compelling or otherwise, to explain his need for the transcript. By contrast, the district court took steps to accommodate any need Taricani might have for the transcript by offering Taricani and his counsel access to the deposition testimony as long as they agreed to keep the transcript confidential. Taricani has said nothing to explain why this option is not enough to serve any legitimate interest he may have as a witness.

<u>Affirmed</u>.