HOWARD, Circuit Judge,
dissenting.
Neither the Federal Rules of Criminal Procedure nor Supreme Court precedent specifically address the circumstances in which a non-defendant grand jury witness may access his testimony, regardless of the format of such access. The panel majority adopts an approach based on the reasoning and rationale of a recent D.C. Circuit opinion, which permits relatively unfettered access even for non-defendant witnesses. Were we writing on a blank slate, I believe this approach would be problematic. But we are not writing on a blank slate; an unbroken line of our cases *24 going back over thirty years forecloses the majority’s result. Thus, because the majority’s conclusion is contrary to our precedent, unwise as a matter of policy, and insupportable on this record, I respectfully dissent.
I.
Since at least 1972, we have made clear that grand jury witnesses have no general right of access to transcripts of their prior grand jury testimony. See In re Bottari, 453 F.2d 370 (1st Cir.1972). We have since elaborated on this rule, making just as clear that fear of future perjury prosecution cannot constitute a cognizable reason for a witness to have access to a transcript of his testimony. See In re Bianchi, 542 F.2d 98, 100 (1st Cir.1976) (citing United States v. Chevoor, 526 F.2d 178, 181 (1st Cir.1975)). We later confirmed our adherence to the majority rule among the circuits that a “non-defendant witness seeking access to his own [grand jury] transcript must make a ‘strong showing of particularized need’ for such disclosure.” [12] In re Special Proceedings, 373 F.3d 37, 47 (1st Cir.2004) (quoting In re Grand Jury Subpoena, 72 F.3d 271, 274 (2d Cir.1995)) (emphases added).
It is true that during the course of In re Special Proceedings, we noted that the district court afforded the witness seeking access to his testimony the opportunity to review it, so long as the witness kept the information confidential. Id. But that comment was made in the context of explaining why the witness failed to make the requisite “strong showing of particularized need.” The majority attempts to treat this summary comment as lending “some support to the distinction” it draws “between granting access and granting a copy.” Maj. Op. at 20; see also Maj. Op. at 18 n. 3. But this short aside did not (and indeed could not) change the ratio decidendi of our decision in In re Special Proceedings, which requires that even a non-defendant witness make a “strong showing of particularized need” for “access ” to his own grand jury testimony.
Where, as here, the language of a prior panel decision is perhaps broader than the precise controversy at issue in that prior decision, we still give effect to the language of the prior panel decision. Awuah v. Coverall, N. Am., Inc., 554 F.3d 7, 11 (1st Cir.2009). Absent contravening authority from this court sitting en banc or the Supreme Court, we must continue to honor the In re Special Proceedings doctrine. Id.; United States v. Holloway, 499 F.3d 114, 118 (1st Cir.2007).[13]
Thus, our case law does not permit the majority’s conclusion that a less demanding standard of particularized need is appropriate where a witness seeks access to his prior grand jury testimony. The ma *25 jority attempts to elide decades of case law by drawing a distinction between access to prior testimony and the availability of copies of prior testimony. But, for the reasons described above, unlike in the D.C. Circuit,[14] our precedent does not countenance such a distinction.[15]
II.
Even if it were permissible for us to sweep away our precedent and to create an entirely new rule regarding a non-defendant witness’s right to access his grand jury testimony, the majority’s chosen rule permitting access based on a “less demanding requirement of particularized need” is unwise. First, in creating this less demanding standard, the majority fails to give due weight to important interests of grand jury secrecy and preventing witness intimidation, while at the same time, the majority overemphasizes a witness’s interest in access to his testimony. Second, the majority’s preferred approach will improvidently hamstring the operation of grand juries.
A.
1.
The majority has identified three interests militating against witness access to grand jury testimony,[16] but has not given full weight to those interests. The majority dismisses the notion that grand jury secrecy is an important interest in this context because grand jury witnesses have no obligation to keep their testimony secret. Although the majority is correct that a witness is under no obligation to keep his testimony secret, Maj. Op. at 17 (citing In re Grand Jury, 490 F.3d at 988-89), it does not follow that permitting a witness access to his own testimony “does not exacerbate ” the threat to grand jury secrecy. Maj. Op. at 20 (emphasis in original). On the contrary, a witness— even if he is denied the ability to review his testimony with counsel — will now have an additional opportunity to think about his testimony and potentially disclose it.[17] Moreover, we can expect that a witness *26 will be likely to remember a significantly greater portion of his testimony during a private review than while undergoing questioning before the grand jury, making any subsequent disclosure more problematic from the standpoint of the important interest in secrecy. Thus, as a practical matter, the majority’s rule will have an adverse impact on grand jury secrecy.
Similarly, witness intimidation will almost certainly increase under this new standard. The majority asserts that “a witness granted only access could, in the face of intimidation, simply decline to reveal his testimony.” Maj. Op. at 19-20 (ciiting In re Grand Jury, 490 F.3d at 990). Respectfully, this assertion is naive. The same people who would cajole a witness to obtain a copy of his testimony and reveal it would be able to use similar methods to coerce the witness into reviewing his testimony and reporting its contents. The majority’s claim that a witness can undertake “evasive measures” to avoid commenting on a recollection refreshed by a lengthy review of the witness’s prior testimony is unpersuasive. See Maj. Op. at 20 n. 5. As the majority correctly notes, such evasive measures are unlikely to succeed with respect to the existence of a transcript copy; these measures are similarly likely to fail when determined individuals demand a witness divulge the contents of his testimony. Given that most witnesses will have better recollections of their testimony after the opportunity to review it in private, a fact that will not elude those seeking additional information, the rule we are now adopting will exacerbate the threat of witness intimidation.
2.
By contrast, again relying on the D.C. Circuit’s approach, the majority overemphasizes a witness’s interest in access to his grand jury testimony. The guiding light in the majority’s balancing is a witness’s supposed need to ensure that past testimony is accurate, presumably to innoculate him from criminal charges of providing false declarations to the grand jury, with secondary consideration for a witness’s need to prepare for future testimony where such testimony is spread over several days. Maj. Op. at 19 (citing In re Grand Jury, 490 F.3d at 988); see also 18 U.S.C. § 1623.[18] Though well-intentioned, the majority’s solicitude for witnesses in this regard is misplaced; although the majority claims that “even witnesses who intend to testify truthfully have an interest in avoiding inaccuracies and inconsistencies that may subject them to potential perjury prosecution,” Maj. Op. at 19, federal law already provides ample protection to such witnesses, which should serve to obviate the majority’s concern over the plight of these witnesses.[19]
The law already provides abundant protections for all grand jury witnesses. Testimony is punishable only when the government proves beyond a reasonable doubt that it is false, made knowingly, and is *27 material to the work of the grand jury. 18 U.S.C. § 1623(a); United States v. Silveira, 426 F.3d 514, 518-19 (1st Cir.2005). Similarly, the relevant statute provides significant protection to those charged with making inconsistent statements. Such statements are actionable only if the government proves beyond a reasonable doubt that they were made (1) knowingly and (2) they are inconsistent to the degree that one of them is necessarily false. 18 U.S.C. § 1623(c). Even then, it is an affirmative defense that the defendant “at the time he made each declaration believed the declaration was true.” Id. Furthermore, in certain circumstances, witnesses have the right to recant any false declarations. 18 U.S.C. § 1623(d).[20] As courts have recognized, these are copious protections for those who fear prosecution for failing to provide less than perfectly accurate testimony to the grand jury. See In re Grand Jury Proceeding, 520 F.Supp.2d at 64 (citing Doe v. United States, 72 F.3d 271 (2d Cir.1995)).
The majority acknowledges the robust protections against unwarranted perjury charges afforded grand jury witnesses, see Maj. Op. at 19, but nevertheless (erroneously in my view) concludes that “federal law strongly reinforces” a witness’s interest in access. Maj. Op. at 19 (internal quotation marks omitted). Rather, the substantial protections available to grand jury witnesses militate in favor of affording less weight to the witness’s interest in obtaining access to grand jury testimony. Consequently, the majority has vastly overstated a witness’s interest in access to prior grand jury testimony, and as a result, has created a new rule that will needlessly and unduly interfere with the efficient operation of grand juries, contrary to the teachings of the Supreme Court.
B.
It is axiomatic that grand juries are integral to the “fair and expeditious administration of the criminal laws.” United States v. Dionisio, 410 U.S. 1, 17, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (citations omitted). Their role is to investigate potential criminal violations “independently of either prosecuting attorney or judge,” and they are therefore imbued with “necessarily broad” investigative powers. See id. at 13, 17, 93 S.Ct. 764 (citing Branzburg v. Hayes, 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)). The Supreme Court has therefore long held that grand jury proceedings should be free of procedural delays and that “[a]ny holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public’s interest in fair and expeditious administration of the criminal laws.” Id. at 17, 93 S.Ct. 764; see also United States v. R. Enters., Inc., 498 U.S. 292, 300-01, *28 111 S.Ct. 722, 112 L.Ed.2d 795 (1991); United States v. Calandra, 414 U.S. 338, 350, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); Stem v. United States Dist. Court, 214 F.3d 4,16-17 (1st Cir.2000).
The majority’s approach of permitting witnesses to access their testimony based on a lesser standard of particularized need that is likely satisfied in many — if not most — grand jury investigations threatens to unleash precisely the mischief that the Supreme Court has warned against. The majority believes that the combination of a prosecutor’s use of perjury warnings during questioning of a witness and the fact that a witness’s testimony involves complex subjects that occurred some time in the past is sufficient to meet its lower threshold of particularized need. Maj. Op. at 21-22, 22. But all grand jury investigations are necessarily retrospective, and they frequently focus on complex matters.[21] Moreover, through evasive and unresponsive testimony, any witness could elicit perjury warnings from those questioning him.[22] Thus, under the majority’s standard, any witness who received a perjury warning and testified over several days in a complex case about events occurring in the past, can advance at least a strong claim for access to his prior testimony, thereby creating precisely the kind of procedural delay the Supreme Court has warned against.
The prosecutors responsible for coordinating the grand jury investigation will now have to defend these claims, which the district courts will need to adjudicate.[23] Handling these tasks will inevita *29 bly distract prosecutors and judges while delaying and sometimes even derailing important grand jury investigations. This problem is only compounded by the fact that our lenient new test will give witnesses every incentive to engage in obstreperous conduct in an effort to cause their testimony to continue over to a second day in the hope of gaining access to a transcript.[24]
This case is proof that all but the most stringent standards of witness access will create slippage that threatens to undermine the orderly operation of grand juries. As these proceedings demonstrate, witnesses, advocates, and even judges can and do disagree regarding a witness’s evasiveness and obstreperousness, as well as the propriety of prosecutors’ questioning. Because such disagreements have the potential to stymie the efficient operation of grand juries and the interests of witnesses are protected under other provisions of federal law, the Supreme Court and our own precedents require that grand juries be permitted to pursue their work without the threat of these types of proceedings.
Moreover, the break in the appellant’s testimony, occasioned by the need to hear another witness, would have been about one week in length had the appellant not delayed it further first to accommodate his counsel, and then again, to wage this protracted battle over access. Indeed, a transcript of the appellant’s testimony was not available until approximately one month after his initial testimony. The majority claims that such a one month delay is “slight” and will not “impede an investigation significantly,” Maj. Op. at 21, but I simply cannot agree. Grand juries are normally limited to eighteen month terms, Fed.R.Crim.P. 6(g), and a delay of one month is hardly slight or insignificant. Moreover, the majority’s ruling leaves open the strong likelihood that there will be multiple witnesses appearing before a single grand jury who may be able to assert a right to review grand jury transcripts, which will further degrade a grand jury’s ability to execute its functions in an expeditious manner.[25] Thus, as this case also demonstrates, the majority’s rule has significant potential needlessly to saddle grand jury proceedings with delay and unnecessarily encrust them with precisely the sorts of procedural requirements that the Supreme Court has warned against.
III.
The facts of this case only confirm the adverse effect the majority’s new standard will have on the efficiency and expeditiousness of the grand jury process. The majority claims that threats of perjury prosecution and the complexity of testimony jointly suffice to meet its lower threshold. *30 Maj. Op. at 21-22, 22. But the record reflects only four perjury warnings and no particularly outrageous conduct on the part of the prosecutors, nor does it bear out the majority’s claim of complexity.
During the course of three hours and fifteen minutes of testimony, the record reveals only four perjury warnings. The first was given at the beginning of the witness’s testimony, reminding him that the use immunity order does not extend to perjury or obstruction of justice:
PROSECUTOR: [Y]ou also understand that the order [granting use immunity] does not protect you if you lie, mislead or obstruct this grand jury’s investigation, do you understand that?
WITNESS: I do understand that yes.[26]
The second warning was given when a different prosecutor first began questioning the witness:
PROSECUTOR: All right. Well you know [name redacted] I’m going to caution you, and [the other prosecutor] told you this earlier. Despite the fact that you have received immunity today, if your testimony is designed to mislead this grand jury or is evasive or equivocal, you can be charged with obstruction of justice, do you understand that?
WITNESS: I do understand that.
The third perjury warning was given after the witness offered a series of evasive answers to straightforward questions:
PROSECUTOR: No, no. Look. Look, [name of witness redacted], again let’s make a — you’re here to tell the truth. Okay? This isn’t a game. All right? You’re not here to defend [third party] or defend your own actions. You have immunity. The only way you get into trouble here is if you lie or mislead this grand jury. Do you understand this concept?
WITNESS: I do.[27]
The fourth and final perjury warning was given purely prophylactically after a two hour lunch break:
PROSECUTOR: [Name redacted], just to remind you, can you please acknowledge that you understand that you are still under oath?
WITNESS: I do understand that, yes.
Other than these warnings reminding the witness that use immunity does not extend to perjury or obstruction of justice, *31 the words “perjury,” “lie,” “obstruct,” or other similar words and phrases appear in the transcript only infrequently and inconsequentially. The record further clarifies that the few times the prosecutors acted in a way that could be characterized as confrontational, see Maj. Op. at 21-22, 22 n. 9, the witness was providing obviously evasive and non-responsive answers.[28]
In addition, it is important to note that although some of the substantive subject matter in this case may be technical, for the most part, the prosecutors did not dwell on the technical complexities. It is also worth noting that the witness admitted to having reviewed many of the documents pertinent to his testimony with his attorney in the days and weeks prior to his testimony. This preparation should substantially ameliorate the majority’s concern regarding both the technical and the “ancient” nature of the testimony. Moreover, the witness was given the opportunity to consult with counsel, who was available outside of the grand jury room, and the record reflects that the witness consulted with counsel at least twice, which should further palliate concerns that anything unfair occurred here.
IV.
Because I find that the majority’s newly invented lesser standard of need is inconsistent with our precedent, significantly detracts from important interests of grand jury secrecy and preventing witness intimidation, substantially overemphasizes the interests of a witness, encrusts grand jury proceedings with needless procedural complications, and is insupportable on this record, I respectfully dissent.

. The panel majority attempts to avoid the full scope of this holding by highlighting the fact that In re Special Proceedings articulated this result as the holding of "a majority of circuits,” and that our rule is "similar.” Maj. Op. at 18 n. 3 (quoting In re Special Proceedings, 373 F.3d at 47). But the majority neglects the next sentence of In re Special Proceedings, which makes clear that we too subscribe to the rule in the majority of circuits: "[a] few circuits take a contrary view ... but are at odds with Bianchi." 373 F.3d at 47. It is therefore clear that a fair reading of In Re Special Proceedings cannot limit its reach merely to copies.

. The majority’s second attempt to reconcile its holding with our precedent is equally unavailing. As explained in note 12, the ratio decidendi of In re Special Proceedings extends to access and does not end with the provision of copies. Consequently, both Awuah and Holloway require that the panel use the "strong showing of particularized need” standard for access as well as copies.

. The D.C. Circuit case, In re Grand Jury, 490 F.3d 978 (D.C.Cir.2007), is factually distinguishable from the case at bar, and the majority has significantly expanded this precedent in order for its rule to encompass cases such as the appellant’s. Unlike in In re Grand Jury, where witnesses without immunity testified as many as three times, with months between such testimony, the appellant in this case had immunity. See id. at 980. Moreover, the appellant's testimony was originally continued for one week, and was later continued for another two weeks to accommodate appellant’s counsel. All other delays in this case have resulted from the appellant’s protracted efforts to gain access to his prior testimony.

. Our circuit’s view of the law finds significant support in the “majority of appellate decisions dealing with this issue.” In re Grand Jury Subpoena, 72 F.3d at 274-75 (citing Davis v. United States, 641 A.2d 484, 490-91 (D.C.App.1994); Bast v. United States, 542 F.2d 893, 895-96 (4th Cir.1976); In re Bianchi, 542 F.2d 98; In re Bottari, 453 F.2d 370).

. Because of the profound threat the majority’s proposed rule poses to the efficiency of grand juries, I discuss this interest in Part II.B, infra.

. The majority leaves open the question of whether the appellant is entitled to have his counsel review the transcript. Maj. Op. at 21 n. 7. It suffices here to note the district court's ruling on remand from the D.C. Circuit, in which the court held that “the expertise of legal counsel is not necessary for the [witness] to assess whether the transcripts reflect inconsistencies or falsehoods that place [the witness] at risk for a perjury prosecution or warrant recantation....” In re Grand Jury Proceeding, 520 F.Supp.2d 61, 64 (D.D.C.2007). Moreover, as the district court further noted, since attorneys are not permitted in the grand jury room when a witness testifies, it would be anomalous to permit an attorney to be present during a review of the transcript. Id. at 64 n. 4.

. The most obvious and greatest antidote to this concern, of course, is that the witness “should testify truthfully in the first instance.” In re Grand Jury Proceeding, 520 F.Supp.2d at 64.

. In addition, as a further argument for disclosure, the majority correctly notes that in certain circumstances, the Federal Rules of Criminal Procedure contemplate disclosure of grand jury transcripts. Maj. Op. at 19 (citing Fed.R.Crim.P. 6(e)(3)(E)(i)). But the majority neglects to acknowledge that such disclosure is only permitted on a strong showing of particularized need, see Douglas Oil Co. of Cal. v. Petrol Stops Nw., 441 U.S. 211, 99 S.Ct. 1667 (1979), which the majority concedes is not met in this case. Maj. Op. at 21 n. 8. Thus, the Federal Rules of Criminal Procedure provide no reason to tip the balance in favor of access.

. The majority's conclusion that it “would be difficult to exercise [the statutory right to recant] without a review of the transcript” does not follow. Maj. Op. at 19. As explained above, because other provisions of federal law provide witnesses with significant protections, recantation is not needed to resolve minor inconsistencies or slight errors. A witness will have a better memory of the major points of his testimony, and after testifying, in consultation with counsel, he will be able to exercise his right to recant without a detailed review of the record of his testimony. Although we require a witness attempting to recant admit that his testimony is false, we have never required any greater level of detail in order to permit recantation. E.g., United States v. Scivola, 766 F.2d 37, 43 (1st Cir.1985); United States v. Goguen, 723 F.2d 1012, 1018 (1st Cir.1983). The majority's continued insistence on transcript access for this purpose exalts recantation above these other protections available to grand jury witnesses, and unnecessarily burdens the efficiency of grand jury investigations.

. The majority claims "something more” is required to meet its diminished standard, Maj. Op. at 22 n. 9, but its opinion refers only to perjury warnings, which are appropriate, necessary, and encouraged in our case law, see infra note 22, the fact that the subject matter involved technical material, and that some events occurred less than ten years in the past. But these are common circumstances and it is likely that many — if not most — grand jury investigations will be encompassed in the ambit of the majority's new rule.

. The majority's decision to consider peijuiy warnings in determining whether a witness has satisfied a less demanding standard will inevitably chill prosecutors' proper use of perjury warnings, which is a disservice to prosecutors, witnesses, and the grand jury's quest for the truth. The record in this case reveals that the prosecutors' perjury warnings were limited and appropriate. See infra pp. 39-41.
These warnings are particularly appropriate in light of our previous expressions of strong displeasure with prosecutors in this circuit who attempt to skirt warnings to grand jury witnesses. See, e.g., United States v. Pacheco-Ortiz, 889 F.2d 301 (1st Cir.1989); United States v. Babb, 807 P.2d 272 (1st Cir.1986). In drawing an adverse inference from four reasonable and appropriate perjury warnings, we are acting at cross-purposes with our firm guidance regarding warnings in grand juries, and unnecessarily burdening prosecutors who legitimately offer appropriate perjury warnings.

. The majority claims that its opinion does not require a district court to review the transcript of grand jury proceedings in all cases, Maj. Op. at 23 & n. 10, but, under the logic of the majority's analysis, the district court necessarily must review the transcript to determine whether the witness can satisfy the "less demanding requirement of particularized need.” Without such a review, it is difficult to imagine how a district court can determine whether perjury warnings were sufficiently numerous and abusive or a witness's testimony sufficiently complex to justify relief.
The majority claims that other procedures, such as witness testimony or proffers and government rebuttal, might allow the district court to determine whether a witness has satisfied the majority's lower standard. Maj. Op. at 23. But the district court will be unable to accept as true a witness's statements in this posture, see Maj. Op. at 21 n. 8, and as this case demonstrates, witnesses and prosecutors will disagree sharply over what transpired before the grand jury. Consequently, as a practical matter, a district court •will abuse its discretion if it fails to review the *29 transcript of a witness's grand jury testimony to determine whether the less demanding requirement of particularized need has been satisfied.

. The majority suggests that "[a] witness cannot establish a need, let alone a particularized one, if the purported need was self-induced.” Maj. Op. at 23. The problem, of course, is that the need in this case was self-induced. The witness responded to straightforward questions with evasive and sometimes misleading responses, which the majority fails to acknowledge. See infra note 27. It was these responses to questions (and the prosecutors’ sensible attempts to follow-up) rather than any particularly technical details of the testimony that occasioned the witness’s unease in this case.

. I can take no comfort in the majority’s observation that "there is no evidence that the D.C. Circuit’s more lenient rule has had any detrimental [ejffect on grand jury investigations in that circuit,” Maj. Op. at 21, because no such evidence was offered by either party or requested by this court, and in view of the secrecy that properly shrouds grand jury proceedings, such evidence should not be readily discernible.

. Often times, a prosecutor will have more than one purpose for this introductory perjury warning, including the buttressing of the witness’s anticipated testimony by suggesting— through the perjury warning — that the immunized witness has every incentive to tell the truth.

. The majority relies on a prosecutor's admonition that the lawyers presenting and the grand jurors hearing the case were “laymen” to conclude that the witness's answers were not evasive or obstreperous but rather “highly technical.” Maj. Op. at 22 n. 9. What the majority overlooks is that the prosecutors in this case were attempting to elicit from the witness basic facts regarding whether a third party was warned of a particular danger, and if so, when and in what level of detail. The witness claimed that such a warning was provided at a meeting at which he was present, but when pressed, conceded that the warning was not given at the meeting. Unlike the details of a warning, which may be technical, the fact of whether a warning was given, and if given, its subject is not normally, and in this case was not "highly technical.” The witness's failure to address this question in a straightforward or even consistent manner is one of many examples of his evasiveness.
Furthermore, I note that the witness requested and was granted the opportunity to consult with counsel shortly after the exchange the majority describes. This further reinforces my conclusion that the prosecutors were not behaving abusively or attempting to overbear the witness. Instead, the prosecutors respected the witness's rights and were only interested in eliciting the truth, which the witness was obfuscating considerably.

. The majority too quickly dismisses the witness’s obstreperous conduct and his consistently unresponsive and insufficient answers to legitimate questions, and the majority further fails to acknowledge the obvious systemic harm that flows from such conduct. Maj. Op. at 23 n. 11. This omission is puzzling in light of the majority's concern for systemic benefits that come from access. See Maj. Op. at 19. When one considers the appellant’s conduct in this case, it is clear that any hardship that he has experienced is 'self-induced,” that prosecutors provided him with warnings in compliance with our case law, see supra note 22, and that the majority’s new rule will grant witnesses wide latitude to avoid cooperating with grand juries and prosecutors searching for the truth.
Finally, the fact that I disagree so sharply with the majority over what transpired in this case and the severity of the prosecutors' perjury warnings reaffirms the wisdom of our decisions in Bottari, Bianchi, and Special Proceedings- — consistent with Supreme Court precedent — to avoid such disputes altogether by applying a rigorous "strong showing of particularized need” standard for all access to grand jury transcripts, while relying on the other substantial protections found in federal law to protect the interests of witnesses.