# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 22, 2007 Decided June 22, 2007

No. 06-3078

IN RE: GRAND JURY

Consolidated with
06-3095

Appeals from the United States District Court
for the District of Columbia
(No. 06mc00057)
(No. 06mc00159)

Before: ROGERS and KAVANAUGH, *Circuit Judges*, and
EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

PER CURIAM: This case raises a question that, surprisingly, has not yet been decided by this court: whether federal grand jury witnesses, after they have testified, are entitled to examine the transcripts of their own testimony. Applying Federal Rule of Criminal Procedure 6(e)(3)(E)(i), we hold that grand jury witnesses are entitled to review the transcripts of their own testimony in private at the U.S. Attorney's Office or a place agreed to by the parties or designated by the district court.

2

**I.**

During a criminal investigation of a company and its employees, the Government issued multiple grand jury subpoenas for the testimony of two corporate employees. The first employee testified on three occasions. Approximately two months after the employee's third grand jury appearance, the employee was subpoenaed to testify a fourth time. The employee sought to review his prior grand jury testimony – in particular asking for copies of the transcripts of the prior three grand jury appearances. The Government, which keeps copies of grand jury transcripts and tapes, *see* Fed. R. Crim. P. 6(e)(1), denied that request. The employee then filed a motion in the United States District Court for the District of Columbia to compel disclosure of the transcripts. The district court denied the motion, and the employee appealed. In the meantime, the employee subsequently testified a fourth time.

The second employee testified once and then was subpoenaed to testify again. The employee sought to review her prior grand jury testimony and asked for a copy of the transcript of the first grand jury appearance. The Government denied that request. Following the Government's denial, the employee filed a motion in the district court to compel disclosure of the transcript of the prior grand jury testimony. The district court denied that motion, and the employee appealed. In the meantime, this employee testified a second time.

**II.**

For two alternative reasons, the Government says that the court lacks jurisdiction over both employees' appeals. First, the Government argues that the district court's denials of the employees' motions for their grand jury transcripts are not "final decisions" under 28 U.S.C. § 1291. Second, the Government

contends that the employees' appeals are moot because the employees have completed their testimony before the grand jury. We disagree with both of the Government's jurisdictional points. The Government also argues the second employee's appeal is untimely; we disagree.

A.

Section 1291 vests courts of appeals with jurisdiction over "appeals from all final decisions of the district courts of the United States . . . , except where a direct review may be had in the Supreme Court." The Government maintains that the district court's orders denying the witnesses access to their own grand jury transcripts are not "final decisions" under § 1291.

No court of appeals has directly answered the question whether a district court order denying a witness access to transcripts of his or her own testimony (as opposed to a party seeking access to transcripts of someone else's testimony) is appealable as a final decision. In arguing against appellate jurisdiction, the Government analogizes this situation to cases involving witnesses' motions to quash grand jury subpoenas on privilege or other grounds. The Government advances this analogy because a witness ordinarily cannot appeal from a denied motion to quash a grand jury subpoena until the witness first refuses to comply with the subpoena and is held in contempt. *See, e.g.*, *United States v. Ryan*, 402 U.S. 530, 532-33 (1971). According to the Government, the same prerequisite should apply to a witness's appeal of a denied motion for access to grand jury transcripts (in other words, the witness first should refuse to comply with a subpoena and be held in contempt). But the Government's argument has a gaping hole: A witness who has already testified will not necessarily be subpoenaed for future grand jury testimony – and thus may not have an opportunity to be held in contempt in order to appeal an order

denying access to the transcript of prior grand jury testimony. For example, what about access to the transcript of a witness's final appearance before the grand jury? Or what about the grand jury witness who testifies only once? Under the jurisdictional rule that the Government would have us adopt, such parties would be out of luck in seeking to appeal denied motions for access to transcripts of their testimony. The Government's attempted analogy therefore does not hold up. *Cf. Cobbledick v. United States*, 309 U.S. 323, 329 (1940) ("Due regard for efficiency in litigation must not be carried so far as to deny all opportunity for the appeal contemplated by the statutes.").

For purposes of appellate jurisdiction, this case is analogous to cases where a party seeks access to the grand jury transcripts of the testimony of other witnesses. As Justice Rehnquist explained, an order denying such third parties access to a transcript "disposes of all of the contentions of the parties and terminates a separate proceeding pending before the grand jury court [and] is therefore appealable as a 'final decision' under 28 U.S.C. § 1291." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 233 (1979) (Rehnquist, J., concurring); *see id.* at 215-17; *see also United States v. Miramontez*, 995 F.2d 56, 57, 59 n. 4 (5th Cir. 1993); *Wisconsin v. Schaffer*, 565 F.2d 961, 965 & n.1 (7th Cir. 1977); *Gibson v. United States*, 403 F.2d 166, 167 (D.C. Cir. 1968); *cf. In re Grand Jury 95-1*, 118 F.3d 1433, 1434, 1436 (10th Cir. 1997); *In re Federal Grand Jury Proceedings*, 760 F.2d 436, 437-38 (2d Cir. 1985).[1] So too in

---

[1] In cases where the disclosure motion was part of a broader challenge to the evidence presented to the grand jury or to the integrity of the grand jury proceedings (challenges that are not usually entertained pre-indictment), some appellate courts have declined to entertain the motion at least until after indictment or conviction. *See United States v. Schiff*, 874 F.2d 705, 706 (9th Cir. 1989); *In re 1985 Grand Jury Proceedings*, 785 F.2d 593, 594-95 (8th Cir. 1988); *In re*

this case. Here, as in cases involving third-party disclosure motions, appellate consideration of the access issue alone is unlikely to significantly delay the grand jury investigation.[2] Here, as in cases involving third-party disclosure motions, the requesting witness may have no opportunity to be held in contempt if the request is denied. And here, as in cases involving third-party disclosure motions, the district court's order terminates a separate proceeding before the grand jury court.

This case is also analogous to the situation where a third party seeks to interpose a privilege objection to subpoenas issued to *other* witnesses – such as a client who objects to a subpoena issued to his or her attorney. In those cases, the party holding the privilege has no opportunity to be held in contempt because it is not the subpoenaed party. The courts therefore have generally considered district court orders denying such motions to be final decisions for purposes of appellate jurisdiction. *See, e.g.*, *Perlman v. United States*, 247 U.S. 7, 9-10, 12-13 (1918); *In re Sealed Case*, 107 F.3d 46, 48 n.1 (D.C. Cir. 1997); *Impounded*, 277 F.3d 407, 410-11 & n.3 (3d Cir. 2002); *In re Grand Jury Proceedings (Manges)*, 745 F.2d 1250, 1251 & n.2 (9th Cir. 1984); *see also* 2 SARA SUN BEALE & WILLIAM C. BRYSON, GRAND JURY LAW AND PRACTICE §§ 9:39, 11:18 ¶ 3 & n.4 (2d ed. 2005). The same rationale applies here because the requesting party may have no opportunity to be held

---

*Grand Jury Matter Impounded*, 703 F.2d 56, 59-60 (3d Cir. 1983).

[2] If the witness is again subpoenaed, the witness then refuses to testify without access to the prior transcript, and the district court for some reason denies access to the transcript, then there could be delay caused by an appeal. In such a case, however, the witness would be in contempt for refusing to testify – and even the Government agrees there is appellate jurisdiction in those circumstances.

in contempt in order to obtain appellate review.

In sum, we hold that the district court's denials of the employees' disclosure motions constitute "final decisions" over which this court has jurisdiction under 28 U.S.C. § 1291.

B.

The Government alternatively contends that this court lacks jurisdiction over the employees' appeals because the cases are moot. According to the Government, the employees requested disclosure of their transcripts in order to prepare for subsequent grand jury appearances. Because both employees went ahead and testified again before the grand jury, the Government argues that the employees no longer need the transcripts of their prior testimony.

This argument is closely related to the Government's initial jurisdictional contention. Under the Government's theory, the witness seeking to appeal the denial of a disclosure motion must refuse to comply with an outstanding subpoena and be held in contempt; and if the witness testifies instead of defying the subpoena, the disclosure issue becomes moot. The primary problem for the mootness version of the Government's contempt-as-prerequisite-for-appeal argument is that a witness has an interest in reviewing his or her grand jury transcript even when the witness has finished testifying. Here, for example, the employees have expressed concern that their prior testimony may have included inadvertent inaccuracies or inconsistencies, and they want to review the transcripts to correct those inaccuracies or inconsistencies. Correcting the record is not a pointless gesture. The Government otherwise could use a witness's inaccurate or inconsistent testimony as a basis, at least in part, for a criminal prosecution of that witness or someone else. *See* 18 U.S.C. § 1623(a), (c) (inconsistent statements). In

addition, federal law explicitly provides a mechanism for a witness to timely recant prior grand jury testimony. *See id.* § 1623(d). Yet witnesses would have difficulty taking full advantage of this statutory recantation right without access to transcripts of their own grand jury testimony. Contrary to the Government's theory, moreover, a witness's interest in reviewing transcripts of past testimony could well increase after any subsequent testimony; that's because the possibility of inaccurate or inconsistent testimony tends to increase the more a witness testifies. *See Bursey v. United States*, 466 F.2d 1059, 1079 (9th Cir. 1972). In short, because a witness's interest in reviewing transcripts of his or her prior grand jury testimony does not end as a result of any subsequent grand jury testimony, the employees' appeals here are not moot. *Cf. Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12-13 (1992); *FTC v. Browning*, 435 F.2d 96, 97-98 n.1 (D.C. Cir. 1970).

## C.

The Government also maintains that one of the two appeals here was untimely under Federal Rule of Appellate Procedure 4. The second employee filed a notice of appeal 49 days after the district court entered the order denying the disclosure motion. The Government argues that this employee missed the 10-day deadline for filing a notice of appeal in a "criminal case" under Federal Rule of Appellate Procedure 4(b). *See id.* 4(b)(1)(A) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 10 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal."). The employee counters that Rule 4(a)'s 60-day deadline applies here; that rule governs the filing of a notice of appeal in a "civil case" in which the United States is a party. *See id.* 4(a)(1)(A)-(B) ("In a civil case, . . . [w]hen the United States or its officer or agency is a party, the notice of appeal may be filed by any party within 60

days after the judgment or order appealed from is entered.").

Is this grand jury matter a "criminal case" or a "civil case" for purposes of Federal Rule of Appellate Procedure 4? The intuitive answer would be that the grand jury matter is a criminal case; after all, the prosecutor uses a grand jury in order to conduct investigations into possible *criminal* offenses. But for purposes of the appellate deadlines in Rule 4, that intuitive answer does not square with the text of the Rule or with the decided cases from other courts of appeals.

This Rule 4 issue has arisen in three distinct contexts: (i) motions by third parties for disclosure of grand jury materials; (ii) appeals of contempt citations after parties have refused to comply with grand jury subpoenas on privilege or other grounds; and (iii) motions by third parties based on privilege grounds to quash or modify grand jury subpoenas issued to other parties. In the context of motions by third parties for disclosure of grand jury materials, two courts of appeals have expressly addressed the question; both courts concluded that the 60-day "civil case" deadline in Rule 4(a) applies. *See In re Special Grand Jury 89-2*, 450 F.3d 1159, 1168-69 (10th Cir. 2006); *Miramontez*, 995 F.2d at 57-58. In the context of appeals from civil contempt citations for refusing to comply with grand jury subpoenas, the Government agrees that the 60-day "civil case" deadline in Rule 4(a) applies. *See* Tr. of Oral Arg. Jan. 22, 2007 at 40; *see also In re Grand Jury Proceedings*, 795 F.2d 226, 230 (1st Cir. 1986). Of course, in such cases, the witness has an incentive to appeal immediately to obtain relief from ongoing contempt sanctions. In the context of motions to quash subpoenas issued to other parties, four courts of appeals have expressly addressed the question, with two circuits holding that the 60-day "civil case" deadline in Rule 4(a) applies and two holding that the "criminal case" deadline in Rule 4(b) applies. *Compare Impounded*, 277 F.3d at 410-11 (applying Rule 4(a));

*and Manges*, 745 F.2d at 1251 (applying Rule 4(a)), *with In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129*, 902 F.2d 244, 247 (4th Cir. 1990) (applying Rule 4(b)); *and In re Grand Jury Proceedings (Company X)*, 835 F.2d 237, 238-39 (10th Cir. 1987) (applying Rule 4(b)).

In the various cases, courts generally have based their decisions on a combination of textual and policy considerations. Here, our analysis of Rule 4 leads us to the conclusion that the 60-day "civil case" deadline of Rule 4(a) applies to appeals of first-party grand jury disclosure motions. To begin with, the text of Rule 4(b) uses the term "defendant." On its face, that provision cannot logically apply to a grand jury proceeding for the simple reason that there is no "defendant" in a grand jury proceeding. *See Impounded*, 277 F.3d at 410-11. Moreover, the policy argument that some courts have cited in applying the 10-day deadline notwithstanding Rule 4's text – namely, to avoid delaying the grand jury investigation – does not apply in this transcript-disclosure context. For example, appeals in cases involving motions to quash can delay the investigation because the witness often will not testify until the appeals process has run its course. *Cf. Company X*, 835 F.2d at 238-39. By contrast, appeals in cases such as this one involving only motions for disclosure of transcripts – and not also a refusal to testify that triggers contempt proceedings – do not threaten to significantly delay the prosecutor and grand jury from continuing their investigation. Consistent with the text of Rule 4, the case law from other circuits in analogous areas, and the fact that the policy arguments applicable to motion-to-quash cases do not apply in this context, we hold that Rule 4(a)'s 60-day deadline applies here. The court therefore has jurisdiction to consider the second employee's appeal.

10

**III**.

With the jurisdictional issues resolved, we turn to the substantive issue raised by the two witnesses: Does Federal Rule of Criminal Procedure 6(e)(3)(E)(i) entitle witnesses to obtain access to the transcripts of their own grand jury testimony?

At a hearing before the district court, the employees, through counsel, advised the district court that, before their reappearances, they sought access to the transcripts of their prior grand jury testimony in order to avoid the possibility of inconsistent statements occasioned by the passage of years since the events in question and many months since their prior grand jury appearances, to aid counsel in advising them, and potentially to allow them to take advantage of recantation pursuant to 18 U.S.C. § 1623. In addition, one of the employees asserted, based on the prosecutor's statements to his counsel, that he was a "subject" and thus his actions were within the scope of the ongoing investigation. In denying the motions for disclosure, the district court found, upon applying the standard for third-party access to grand jury transcripts,[3] that neither employee had shown a particularized and compelling need that outweighed the interests in maintaining grand jury secrecy.[4]

---

[3] *See Douglas Oil Co.*, 441 U.S. at 222-23; *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399-400 (1959); *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 678-79, 682 (1958).

[4] As regards the first employee, the district court stated:

> It will always be the case that access to grand jury transcripts of prior testimony will aid a subject and his counsel, particularly when being questioned on more than one occasion over a period of time about facts surrounding the same or related events. If these

On appeal, the employees contend in their briefs that they "seek only access to the transcripts of their prior grand jury testimony." Appellants' Br. at 11; *see also id.* at 43; Reply Br. at 20. Although their briefs also discuss why they are entitled to copies of the transcripts, Appellants' Br. at 23-24, appellants' counsel expressly conceded during oral argument that if the employees were granted access to the transcripts, then they

---

> concerns were deemed to outweigh the policy of grand jury secrecy, the Court would find itself in the position of ordering disclosure with frequency to any person called to appear more than once before a grand jury. The Court *also* finds merit in the Government's argument that releasing grand jury testimony transcripts to corporate employees jeopardizes the integrity of the grand jury process by discouraging employees from testifying fully and openly for fear of retaliation from corporate employers.

Mem. Op. May 16, 2006, at 7 (footnote omitted and emphasis added).

As regards the second employee the district court stated:

> Having found that in order to compel disclosure of her prior grand jury transcript Petitioner must show a particularized need that outweighs the need for grand jury secrecy, and that Petitioner's articulated need to avoid inconsistent statements is not sufficiently compelling or particularized to outweigh the need for grand jury secrecy in an active and ongoing investigation, the Court will deny Petitioner's request for an order compelling production of the transcript of her prior grand jury testimony.

Mem. Op. May 1, 2006, at 6.

would not need to obtain copies of the transcripts of their prior grand jury testimony.[5]  Consequently, if this court holds that the employee-witnesses were improperly denied an opportunity to review – to have access to, as distinct from obtaining copies of – the transcripts of their prior grand jury testimony, then the court has no occasion to opine further.  The employees have repeatedly made clear that their needs would be fully met through having access only.  We consider this legal question de novo.  *See In re Sealed Case*, 146 F.3d 881, 883-84 (D.C. Cir. 1998); *In re Sealed Case*, 121 F.3d 729, 740 (D.C. Cir. 1997); *cf. United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 427, 442 (1983).

Federal prosecutors use grand juries to assist their investigations of possible federal crime.  *See Sells Eng'g, Inc.*, 463 U.S. at 423.  By employing a grand jury (and only by employing a grand jury), a federal prosecutor may issue subpoenas for witnesses and documents, backed up by penalties of contempt and other potential sanctions for non-compliance.  When using the grand jury, a prosecutor also may question a witness without the witness's attorney present – a great tactical advantage to the prosecutor in obtaining the truth from recalcitrant witnesses.  For those and other reasons, the grand jury is considered a vital prosecutorial tool for investigation of

---

[5]  During oral argument on January, 22, 2007 (Tr. at 14), the following colloquy occurred:

| The Court: | Can I ask you one question on the merits, which is would you be satisfied by a right to review the transcript as opposed to obtain the transcript?  In other words, the witness is allowed to go to the offices of the prosecutor and to review the transcript? |
|---|---|
| Appellants' Counsel: | Yes, Your Honor. |

possible federal crimes.

To help encourage grand jury witnesses to testify honestly and without fear and thereby assist the investigation's search for truth, the other parties in the room for a witness's testimony – the prosecutors, the grand jurors, and the court reporters or transcribers if any – are under an obligation of secrecy with respect to grand jury proceedings. The witnesses themselves are not under an obligation of secrecy, however. As Wigmore explained and as Rule 6 provides, the theory of grand jury secrecy is that "the witness is guaranteed against compulsory disclosure; the *privilege* must therefore be *that of the witness*, and rests upon his consent." 8 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2362 (McNaughton rev. 1961) ("WIGMORE"); *see also* Fed. R. Crim. P. 6(e)(2)(A)-(B); *cf.* Fed. R. Crim. P. 6, Advisory Committee Notes, 1944 Adoption, Note to Subdivision (e) ("rule does not impose any obligation of secrecy on witnesses").

The grand jury secrecy question has become somewhat more complex in modern times because, as a result of a rule change in 1979, the Federal Rules now mandate that grand jury proceedings be transcribed or taped. *See* Fed. R. Crim. P. 6(e)(1); 1 BEALE & BRYSON, GRAND JURY LAW AND PRACTICE § 4:9 ¶ 2. Government attorneys keep the transcripts and tapes of grand jury proceedings, and the Government cannot disclose those transcripts or tapes absent a court order or except in circumstances expressly specified by Rule 6. *See* Fed. R. Crim. P. 6(e)(1), (3)(A)-(E).

On occasion, a third party will request copies of the grand jury transcripts of another witness's testimony, often for use in a separate legal proceeding such as a related civil case. *See, e.g.*, *Douglas Oil Co.*, 441 U.S. at 213, 216-17. On other occasions, as here, the witnesses may seek access to the

transcripts of their own testimony. *See, e.g.*, *In re Sealed Motion*, 880 F.2d 1367, 1368, 1370-71 (D.C. Cir., Spec. Div., 1989).

For authorized disclosure of grand jury materials under Rule 6(e)(3)(E)(i), a threshold requirement is that the disclosure be "preliminar[y] to or in connection with a judicial proceeding." That prerequisite is satisfied in this case; indeed, the Government does not dispute that the grand jury investigation is a "judicial proceeding" for these purposes, which makes sense given that the district court itself convenes and supervises the grand jury proceedings. Therefore, disclosure here would be "in connection with a judicial proceeding." *Cf. In re 1979 Grand Jury Proceedings*, 479 F. Supp. 93, 96 (E.D.N.Y. 1979) ("well settled that a grand jury hearing is a 'judicial proceeding' within the scope of Rule 6(e)" and therefore Rule 6(e) may "support disclosure 'in connection with' the grand jury's own proceedings") (internal quotation omitted). Alternatively, disclosure here may be considered "preliminary" to a judicial proceeding – namely, preliminary to a possible criminal trial – which would similarly give courts authority to order disclosure in response to first-party requests. *See United States v. Mayes*, 670 F.2d 126, 129 (9th Cir. 1982) ("We need not decide whether a grand jury proceeding is 'a judicial proceeding' under Rule 6(e), as it seems clear that grand jury proceedings are at least preliminary to a judicial proceeding."); 1 BEALE & BRYSON, GRAND JURY LAW AND PRACTICE § 5:11 ¶ 3 ("[G]rand jury proceedings are generally 'preliminary to' criminal court proceedings . . . ."); 2 SUSAN W. BRENNER & LORI E. SHAW, FEDERAL GRAND JURY: A GUIDE TO LAW AND PRACTICE § 18:6 (2006) ("It is . . . likely that the Court would find that a grand jury investigation is 'preliminar[y] to' a judicial proceeding, which would allow disclosure to proceed under Rule 6(e)(3)(E)(i).") (alteration in original); *cf. United States v. Baggot*, 463 U.S. 476, 477, 479-80 & n.2 (1983)

(criminal prosecution would be judicial proceeding under Rule 6); *United States v. Bates*, 627 F.2d 349, 351 (D.C. Cir. 1980).

Under either interpretation of "preliminarily to or in connection with a judicial proceeding," the bottom line here is the same:  The federal courts have the authority under Rule 6(e)(3)(E)(i) to order disclosure to grand jury witnesses of their own transcripts.  The more difficult question is when courts should do so.

As to that issue, the text of Rule 6(e)(3)(E)(i) simply provides that a "court may authorize disclosure – at a time, in a manner, and subject to any other conditions that it directs – of a grand-jury matter: (i) preliminarily to or in connection with a judicial proceeding."  The text does not say whether and when grand jury witnesses may obtain access to transcripts of their own grand jury testimony.  For that and other reasons, the scope of Rule 6 is an area "badly in need of comprehensive legislative attention."  1 BEALE & BRYSON, GRAND JURY LAW AND PRACTICE § 5:1 ¶ 4.  Until that happens, however, we have no choice but to decide the legal question before us:  Are grand jury witnesses never entitled to have access to the transcripts of their prior testimony?  Are they always entitled to access to the transcripts?  Are they entitled to access only in certain circumstances?

Although this court has not addressed the issue, several courts of appeals have previously considered whether a grand jury witness can obtain access to the transcript of his or her own testimony, usually in terms of obtaining transcript copies.  The Ninth Circuit and the former Special Division for the Purpose of Appointing Independent Counsels held that grand jury witnesses are entitled in certain circumstances to obtain a copy of their grand jury transcripts.  *See In re Sealed Motion*, 880 F.2d at 1368, 1370-71; *Bursey*, 466 F.2d at 1080; *see also United States*

*v. Rose*, 215 F.2d 617, 628-30 (3d Cir. 1954), *cited in In re Sealed Motion*, 880 F.2d at 1372-73 & n.8. By contrast, a divided Fourth Circuit panel and the First Circuit held that grand jury witnesses are not entitled to obtain copies of their transcripts; two other courts of appeals seem to have reached the same conclusion. *See Bast v. United States*, 542 F.2d 893, 894, 896 (4th Cir. 1976) (applying particularized need standard); *In re Bianchi*, 542 F.2d 98, 100 (1st Cir. 1976); *see also In re Grand Jury Subpoena*, 72 F.3d 271, 273-75 (2d Cir. 1995); *United States v. Scrimgeour*, 636 F.2d 1019, 1025 (5th Cir. 1981). In a divided panel decision, the Seventh Circuit held that grand jury witnesses may not obtain copies of the transcripts of their own testimony, although that case was later reheard by the en banc Seventh Circuit, which evenly split on the question. *See United States v. Clavey*, 565 F.2d 111, 114-15 (7th Cir. 1977), *vacated and rev'd en banc in part*, 578 F.2d 1219 (7th Cir. 1978). On occasion, the courts have considered whether the witness has alternative means to review the prior testimony. *See, e.g.*, *Bursey*, 466 F.2d at 1080 & n.11; *Rose*, 215 F.2d at 629-30. Otherwise the right to a copy has been examined in terms of preventing a miscarriage of justice, *see, e.g.*, *Rose*, 215 F.2d at 629, or fundamental fairness inherent in due process inasmuch as the prosecutor has access to the transcripts, *see, e.g.*, *Bursey*, 466 F.2d at 1079-80; *In re Sealed Motion*, 880 F.2d at 1371-73. For their part, several commentators have argued, without distinguishing between having access and obtaining a copy, that a witness should be entitled to the grand jury transcript of the witness's own testimony in some circumstances – e.g., after the grand jury process has concluded and the witness is subpoenaed to testify at trial. *See* COUNCIL FOR COURT EXCELLENCE, THE GRAND JURY OF TOMORROW 69-72 (2001); *see also* George Edward Dazzo, *Opening the Door to the Grand Jury: Abandoning Secrecy for Secrecy's Sake*, 3 D.C. L. REV. 139, 164-65 (1995) (suggesting a rebuttable presumption favoring pretrial access by a defendant).

In accord with the open-ended text of Rule 6(e)(3)(E)(i) and the general analytical approach of the cases from other circuits, the parties here agree that we must weigh the competing interests of the Government and grand jury witnesses. That approach is consistent, moreover, with the way that the Supreme Court has weighed the competing interests for and against disclosure when assessing *third-party* requests for the secret transcripts of the testimony of other witnesses. *See Sells Eng'g, Inc.*, 463 U.S. at 442-44; *Douglas Oil Co.*, 441 U.S. at 221-23.

We begin with the interests of grand jury witnesses. Grand jury witnesses obviously want to ensure that the transcripts of their testimony accurately convey their recollections. A grand jury witness is typically nervous and may make mistakes in testimony, without always realizing it at the time (and especially without an attorney present in the grand jury to help identify inadvertent errors). Grand jury witnesses often are asked numerous questions about specific names, dates, places, meetings, conversations, and the like. In their search for the truth, prosecutors tend to fire the questions rapidly and aggressively, and sometimes ask variations of the same question repeatedly. *See Bursey*, 466 F.2d at 1079; 1 BEALE & BRYSON, GRAND JURY LAW AND PRACTICE § 5:5 ¶ 3. It therefore is not uncommon for a witness to testify honestly but inaccurately on certain points. *See Bursey*, 466 F.2d at 1079. It also is not uncommon for a witness to intentionally provide false testimony, but that does not affect our point as to the interests of honest witnesses. If a witness's testimony includes inaccuracies or inconsistencies, the Government might use those inaccuracies or inconsistencies against the witness – for example, either during the witness's reappearance before the grand jury or in a prosecution of the witness or someone else. *See, e.g.*, 18 U.S.C. § 1623(a) (inconsistent statements as basis for perjury conviction). Witnesses therefore have a great interest in ensuring that their recollections are accurately reflected in the

transcripts. A witness's general interest in reviewing the transcript is strongly reinforced by federal law, which expressly allows witnesses to timely recant prior grand jury testimony without legal penalty. *See id.* § 1623(d). A witness would have difficulty taking full advantage of the statutory recantation provision, however, without obtaining prompt access to transcripts of their own testimony. In cases where the witness may testify again in the same investigation, as here, the witness has an additional reason to review the transcript of the prior testimony: to help prepare for the upcoming testimony. *See Bursey*, 466 F.2d at 1079. That last interest is no longer implicated in this particular case because the two employees have apparently completed their grand jury testimony.

On the other side of the ledger, the Government advances two basic rationales for denying witnesses access to their own transcripts: maintaining grand jury secrecy and preventing witness intimidation.

Grand jury secrecy rules prevent the public or others from learning what a grand jury witness said to the grand jury. The guarantee of secrecy thus encourages witnesses to testify candidly. But the secrecy rationale does not apply when a witness seeks access to a transcript of *his or her own* grand jury testimony. Indeed, it seems illogical to cite grand jury secrecy as the basis for denying a witness's access to the transcript of his prior grand jury testimony. Preventing a *third party* from reviewing a witness's grand jury testimony is essential to guarantee secrecy to witnesses; preventing *the witness* from reviewing the witness's own testimony is entirely unnecessary to guarantee secrecy to witnesses. *See In re Sealed Motion*, 880 F.2d at 1368, 1370-72 & n.6 ("[G]overnment's interest in nondisclosure was a *non sequitur* when a grand jury witness moves for a copy of his own testimony because the right to secrecy in a grand jury proceeding belongs to the grand jury

witness and the witness is already cognizant of his testimony . . . .") (internal citation omitted); *see also Rose*, 215 F.2d at 628-30 (disclosure to witness who testified "would not subvert any of the reasons traditionally given for the inviolability of Grand Jury proceedings"); *Clavey*, 565 F.2d at 121 (Swygert, J., dissenting) ("A review of the reasons traditionally advanced for justifying the veil of secrecy upon grand juries shows that none dictates that a witness should be denied a copy of his own testimony."); *Bast*, 542 F.2d at 898 (Wyzanski, J., dissenting) (any dangers that generally justify grand jury secrecy do not apply to witness's request to access transcript of his grand jury testimony). For this reason, the Supreme Court's "particularized need" standard, which the Court crafted to deal with *third-party* requests for secret transcripts of other witnesses' testimony, does not apply in this *first-party* context. *See In re Sealed Motion*, 880 F.2d at 1370-73 & n.6; *see also, e.g.*, *Sells Eng'g, Inc.*, 463 U.S. at 420, 443-44; *Douglas Oil Co.*, 441 U.S. at 216-17, 222-23; *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 396, 399-400 (1959); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 678-79, 682 (1958).

To be sure, the Government is concerned about grand jury witnesses (or their attorneys) who disclose information to other grand jury witnesses (or their attorneys) with the purpose of obstructing the criminal investigation. The Government identifies joint defense agreements among attorneys as a threat to the integrity of the grand jury process. But denying witnesses access to their own transcripts to help prevent witnesses from talking to others makes little sense to begin with – and makes even less sense given that grand jury witnesses are under no legal obligation of secrecy. A grand jury witness is legally free to tell, for example, his or her attorney, family, friends, associates, reporters, or bloggers what happened in the grand jury. For that matter, the witness can stand on the courthouse

steps and tell the public everything the witness was asked and answered. *See* Fed. R. Crim. P. 6(e)(2)(A)-(B); Fed. R. Crim. P. 6, Advisory Committee Notes, 1944 Adoption, Note to Subdivision (e) ("rule does not impose any obligation of secrecy on witnesses"). The secrecy rules therefore are no justification for denying witnesses access *to their own transcripts*.

The Government also expresses concern about witness intimidation. Here, the Government is on firmer ground. We of course agree with the Government that witness intimidation (and the fear of it) remains a serious problem in our criminal justice system. *See Illinois v. Abbott & Assocs.*, 460 U.S. 557, 566-67 n.11 (1983); 1 BEALE & BRYSON, GRAND JURY LAW AND PRACTICE § 5:12 ¶ 7. And if a witness could routinely obtain a copy of the grand jury transcript, the Government theorizes that an interested party could in turn pressure the witness to obtain the transcript and to give it to that third party. *See United States v. John Doe, Inc. I*, 481 U.S. 102, 125 (1987) (Brennan, J., dissenting) ("[A] rule of automatic access would expose grand jury witnesses to potential intimidation by making it possible for those with power over the witness to monitor his or her testimony.") (internal quotation omitted) (emphasis altered); *In re Alvarez*, 351 F. Supp. 1089, 1090-91 (S.D. Cal. 1972). The Government further suggests that the witness's fear of being forced to disclose the transcript to a threatening third party could deter witnesses from testifying freely and candidly in the first place.

Regardless of whether the possibility of witness intimidation would justify denying copies of transcripts, an issue we need not decide, the Government's witness intimidation argument lacks force with respect to a witness's merely *reviewing* the transcript in private at the U.S. Attorney's office or a place agreed to by the parties or designated by the district court. Grand jury witnesses are not substantially more likely to

face pressure to divulge information about their grand jury testimony if they can review their transcript in private than if they have to recall their testimony from memory. To take a simplistic example, if an individual tracks down a grand jury witness and asks, "Did you dime me out to the grand jury?" the witness's answer – some variation of yes, no, I'm not talking about it, or my lawyer told me not to talk about it – is not realistically affected by whether the witness can review the transcript at a secure location. The Government's compelling interest in preventing witness intimidation therefore does not support denying the witness the opportunity to *review* the transcript of his prior grand jury testimony.

In sum, grand jury witnesses have a strong interest in reviewing the transcripts of their own grand jury testimony. The Government has little good reason to prevent witnesses from reviewing their transcripts. Weighing the interests of witnesses and the Government, we therefore hold that the grand jury witnesses are entitled under Rule 6(e)(3)(E)(i) to review transcripts of their own grand jury testimony in private at the U.S. Attorney's Office or a place agreed to by the parties or designated by the district court. We leave to the sound discretion of the district court whether to permit the witnesses' attorneys to accompany the witnesses as they review their transcripts and whether to allow the witnesses or their attorneys to take notes. Because our holding on the right of access affords the employees complete relief, we need not and do not resolve the issue of whether witnesses also have a right to obtain a copy of the transcripts of their prior testimony, leaving that issue for another day. Accordingly, because the district court erred in applying the third-party standard, *supra* note 3, we reverse the orders denying the employees' motions for disclosure of the transcripts of their prior grand jury testimony to the extent that they were denied access.