# United States Court of Appeals

## For the First Circuit

No. 08-1880

IN RE: GRAND JURY

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Torruella, Stahl, and Howard,
Circuit Judges.

Andrew Good, with whom Philip G. Cormier and Good & Cormier,
were on brief for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief for
appellee.

May 11, 2009

**TORRUELLA**, **Circuit Judge**. This appeal arises from an ongoing grand jury investigation. The appellant, a non-target, testified before the grand jury concerning highly technical and ancient subject matter. After approximately three hours of testimony, during which the government reminded the appellant repeatedly that a failure to testify truthfully would be subject to possible perjury charges, the government continued its examination to a later date. In the interim, the appellant sought access to a transcript of his prior testimony pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(i). The district court denied the request, finding that the appellant failed to provide a strong showing of a particularized need for access to the transcript. The appellant refused to testify further, and, on the government's motion, the district court found the appellant in contempt. This appeal followed. After careful consideration, we reverse and remand.

## I.  Background

To avoid compromising the grand jury investigation, we only discuss the bare minimum of facts necessary to dispose of this appeal.

In May 2008, the government issued a subpoena to the appellant to testify before a federal grand jury sitting in the District of Massachusetts, and subsequently issued a subpoena

directing him to produce documents related to the subject matter of his testimony.

After receipt of the subpoenas, the appellant indicated through counsel that he would assert his Fifth Amendment right against self-incrimination and would refuse to testify. In response, the government applied for and obtained an order granting the appellant use immunity pursuant to 18 U.S.C. §§ 6002 & 6003, and compelled him to testify before the grand jury.

About a week later, in June 2008, the appellant testified before the grand jury for approximately three hours and fifteen minutes. During his examination, which was conducted by three assistant U.S. attorneys simultaneously, the prosecutors warned the appellant multiple times that the use immunity order did not protect him from prosecution for testifying falsely. In some instances, the prosecutors asked repetitive questions, and suggested inconsistencies in the appellant's testimony. Other times, the prosecutors verbally abused the appellant. However, the prosecutors did not indicate that they were planning to indict the appellant on perjury or obstruction of justice charges. Moreover, the appellant was questioned about events and documents of significant complexity. A number of these events and documents dated back to 1999.[1]

---

[1]We note that during the course of this appeal we requested a copy of the transcript and exhibits from the appellant's appearance for our own independent review.

The government did not complete its examination. Consequently, the government ordered the appellant to return and complete his testimony the following week. At the appellant's request, the government agreed to continue his return to the grand jury for an additional two weeks, until early July 2008.

In the interim, counsel for the appellant sent a letter to the government seeking an opportunity for the appellant to review the transcript of his grand jury testimony in advance of his second day of testimony. The government declined the request.

As a result, the appellant filed an emergency motion for access to a transcript of his grand jury testimony pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i), which authorizes a court to order disclosure of grand jury materials "preliminarily to or in connection with a judicial proceeding." In particular, appellant sought to review his transcript at the U.S. Attorney's office or a similar location, and further requested that his lawyer accompany him and that the appellant be allowed to take notes.

In support of his motion, the appellant cited a recent D.C. Circuit decision, In re Grand Jury, 490 F.3d 978 (D.C. Cir. 2007), in which the court held that grand jury witnesses are entitled under Rule 6(e)(3)(E)(i) to review transcripts of their own grand jury testimony. See id. at 980, 990. In the alternative, the appellant argued that he has shown a particularized need for access to the transcript given the

-4-

prosecutors' warnings of possible perjury prosecution and the complexity of the subject matter of his testimony. The government opposed, and argued that, under First Circuit law, the appellant must provide "a strong showing of particularized need" to obtain access, see In re Special Proceedings, 373 F.3d 37, 47 (1st Cir. 2004) (quotation marks omitted), and that the appellant had failed to do so.

A hearing was held on the same day as the filing of the emergency motion, which, as the district court noted, did "not provide[] a great deal of time for reflection." In ruling on the motion, the district court first acknowledged that "at least at first reading I agree with the reasoning of the D.C. Circuit case." In particular, the district court noted that the benefit to the witness of access far outweighs the "very mild burden on grand jury secrecy, so mild as to be close to nonexistent," since a witness is not bound to keep his testimony secret, and could easily debrief his or her attorney after testifying. Moreover, although the district court recognized the "potential administrative burden" caused by the D.C. Circuit rule in permitting access, it concluded, in its own view, that "the benefit to the witness greatly outweighs the burden to the government."

Nevertheless, the district court concluded that it was bound by First Circuit precedent, and thus required the appellant to provide a strong showing of a particularized need for the

transcript in order to obtain access. In examining whether the appellant had made a showing of particularized need, the district court stated:

> I do not find that there is a particularized need here, that is, as I interpret the case law, as to what is required to show a particularized need; that there are three unusual aspects to this: The first is that the testimony spread over two days or more than one day; the second is that the witness was confronted by the prosecutor and given perjury warnings about the accuracy of some of his statements; and the third is that the subject matter is quite complex. While to some extent those facts are unusual, they're not highly unusual, and I don't think under the [In re] Bianchi [542 F.2d 98 (1st Cir. 1976)] and In Re: Special Proceedings line of cases are enough to show particularized need.

Accordingly, the district court denied the motion.

One week later, in mid-July 2008, the appellant appeared before the grand jury but refused to answer questions. That same day, the government petitioned the district court to hold the appellant in civil contempt pursuant to 28 U.S.C. § 1826. Still that same day, the district court conducted a hearing during which it allowed the government's petition for contempt in an oral ruling and written order. However, the district court stayed that order during the pendency of any appeal.

Counsel for the appellant also pointed out that the transcript of the appellant's first day of grand jury testimony was now available, and moved the district court to order the government to file the transcript with the court. After initially

-6-

entertaining the request, the district court denied the motion, because it was concerned about the "mechanical difficulties involved," and since it was "not relying on what the transcript said, I don't feel I need to see the transcript.  I won't make it part of the record."

## II.  Discussion

On appeal, the appellant contends that the district court erred in denying his request to review a transcript of his grand jury testimony prior to his second day of examination.  We review any rulings of law de novo, and, to the extent we find no legal error, any denial of disclosure for abuse of discretion.  See In re Grand Jury Proceedings, 580 F.2d 13, 18 (1st Cir. 1978).

### A.  Standard That Applies to a Request for Access

The appellant first contends that the district court erred as a matter of law in requiring him to provide a "strong showing of particularized need" in order to obtain access to his transcript.  Instead, the appellant argues that a "less demanding" standard of particularized need applies when a grand jury witness seeks only access to a transcript of his testimony, rather than a copy.  For support, appellant relies on In re Grand Jury, a recent D.C. Circuit decision where the court held that grand jury witnesses are entitled "to review transcripts of their own grand jury testimony in private at the U.S. Attorney's Office or a place agreed to by the parties or designated by the district court."  490

F.3d at 990. Given its importance to the appellant's claims, we discuss the D.C. Circuit's decision in some detail.

### 1. The D.C. Circuit Decision

Grand Jury involved a grand jury investigation into a company and its employees. Id. at 980. Two employees of the company testified before the grand jury, and were subpoenaed to testify an additional time. Id. Both moved for access to a transcript of their prior grand jury testimony before testifying further, "in order to avoid the possibility of inconsistent statements occasioned by the passage of years since the events in question and many months" since they last testified, as well as the possible need "to take advantage of recantation pursuant to 18 U.S.C. § 1623." Id. at 984. The district court denied both motions, finding that neither employee provided a sufficient showing of "particularized need" for the transcripts that "outweighed the interests in maintaining grand jury secrecy." Id. at 984 & n.4.

On appeal, the D.C. Circuit, addressing the issue for the first time, see id. at 987, noted that the district court, in requiring a showing of particularized need, relied on Supreme Court precedent that concerned third parties seeking copies of such materials. See id. at 984 & n.3 (citing, among other cases, Douglas Oil Co. of Cal. v. Petrol Stops Nw., 441 U.S. 211, 222-23 (1979)). However, in contrast to a third party, a grand jury

-8-

witness is under no obligation to maintain the secrecy of grand jury proceedings.  Id. at 985; see also Fed. R. Crim. P. 6, Advisory Committee Notes, 1944 Adoption, Note to Subdivision (e) ("[R]ule does not impose any obligation of secrecy on witnesses.").

With this background in mind, the D.C. Circuit addressed "when courts should" provide access. Grand Jury, 490 F.3d at 986. Noting that the text of Rule 6(e)(3)(E)(i) is "open-ended," and following the "general analytic approach" of other circuits that have addressed the issue, the court "weigh[ed] the competing interests of the Government and grand jury witnesses." Id. at 987. As to witnesses, the district court identified two interests in obtaining access: (1) the need to "ensur[e] that their recollections are accurately reflected in the transcripts," and (2) for those witnesses who "may testify again in the same investigation . . . to help prepare for the upcoming testimony." Id. at 988.  As to the government, the court identified two competing interests: (1) to maintain grand jury secrecy, and (2) to prevent witness intimidation.  Id.

The court concluded that the witness interests in access outweighed the government's interests in prohibiting such access. As to secrecy, the court noted that the secrecy rationale was meant to prevent "the public or others from learning what a grand jury witness said to the grand jury."  Id.  Thus, while preventing access to a third party was necessary to maintain the secrecy of

-9-

grand jury witness testimony, preventing access to the witness himself "makes little sense," since a witness already knows the content of his testimony and, in any event, has the right to broadcast the substance of his testimony if he so desired. Id. at 988-89 (noting that "the witness can stand on the courthouse steps and tell the public everything the witness was asked and answered"). The D.C. Circuit therefore concluded that "the Supreme Court's 'particularized need' standard, which the Court crafted to deal with third-party requests for secret transcripts of other witnesses' testimony, does not apply in this first-party context." Id. at 989.

As to witness intimidation, the court found compelling the concern that providing copies to a witness would result in third parties forcing disclosure of the copies and thereby "deter[ring] witnesses from testifying freely and candidly in the first place." Id. at 989. However, the concern with intimidation "lacks force with respect to a witness's merely reviewing the transcript in private at the U.S. Attorney's office or a place agreed to by the parties or designated by the district court." Id. at 990. The court, in particular, saw little difference between pressure to divulge the contents after a private review of the transcript and pressure to "recall their testimony from memory." Id. Based on this weighing of interests, the court concluded that

first-party witnesses are entitled to access of their transcripts under Rule 6(e).

## 2. **Analysis**

The appellant contends that the D.C. Circuit's reasoning in Grand Jury supports his claim of a less demanding standard, since he seeks the same access to a transcript of his own testimony that the D.C. Circuit permitted. We agree. To be clear, we do not adopt the D.C. Circuit's holding that a grand jury witness is entitled to access to a transcript of his grand jury testimony. Instead, we hold that, in light of the considerations supporting the D.C. Circuit decision and our own review of our precedent, a less demanding requirement of particularized need applies when a grand jury witness demands access to a transcript, rather than a copy of the transcript.[2]

Admittedly, we have held that "a grand jury witness has no general right to the transcripts of his testimony." Bianchi, 542 F.2d at 100 (citing In re Bottari, 453 F.2d 370 (1st Cir. 1972)). Instead, in this circuit a witness must provide "a strong

---

[2]The dissent unfortunately misconstrues our decision by stating that "[t]he panel majority adopts an approach based on the reasoning and rationale of a recent D.C. Circuit opinion, which permits relatively unfettered access even for non-defendant witnesses." (Dissent at 25). As the decision makes clear, we do not adopt the D.C. Circuit approach, and although we discuss the D.C. Circuit at great length, we base our decision on a review of our precedent as well as our independent assessment of the interests at stake, many of which were not addressed by the D.C. Circuit.

showing of particularized need" in order to obtain a copy of a transcript. Special Proceedings, 373 F.3d at 47 (quotation marks omitted).

However, as the appellant correctly points out, our prior case law has solely concerned grand jury witnesses seeking copies of their transcript, while the appellant seeks only access, understood as an opportunity to review the transcript. In Bottari, our earliest case on the issue, the witness sought, as a precondition to testifying, a copy of "a transcript of the questions and answers following his appearance before the grand jury." 453 F.2d at 371. Likewise, in Bianchi, the witness sought "copies of his prior grand jury testimony." 542 F.2d at 100 (emphasis added). And in Special Proceedings, a case outside the grand jury context, but involving what we determined an analogous situation, a special investigation, we rejected a witness's claim for a copy of his deposition transcript.[3] 373 F.3d at 47.

---

[3]The dissent points out that in Special Proceedings we stated the following:

> Taricani may be arguing that as a witness he has an elevated right to copies of his own deposition transcript. However, in this circuit "a grand jury witness has no general right to transcripts of his testimony." In re Bianchi, 542 F.2d 98, 100 (1st Cir. 1976). Similarly, a majority of circuits hold that a non-defendant witness seeking access to his own deposition transcript must make "a strong showing of particularized need" for such disclosure.

373 F.3d at 47 (emphasis added). According to the dissent, the use of the word "access" above means that our precedent equally

In none of these cases did we have the occasion to address whether a demand for access, which imposes a lesser burden on the governmental interests of grand jury secrecy and witness intimidation, still requires a strong showing of particularized need. Nor has the Supreme Court opined on the issue. However, the Supreme Court, in articulating a standard of particularized need for third parties, has noted that its "standard is a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some

---

requires a "strong showing of particularized need" for requests for a review of a transcript. (Dissent at 26-28).

We disagree. First, the sentence in which "access" appears only describes what the "majority of circuits" have held. More importantly, it notes that such a holding is only "[s]imilar[]" to our own rule, which, described in the previous sentence, does not deal with "access" but with copies, or, to borrow the words of the Bianchi court, with "a general right to transcripts." 542 F.2d at 100 (emphasis added).

Second, the dissent relies upon Awuah v. Coverall N. Am., Inc., 554 F.3d 7 (1st Cir. 2009), for the proposition that we give effect to the language of a prior panel decision even if it is "perhaps broader than the precise controversy at issue." (Dissent at 27). In Awuah, however, we gave effect to broader language in a prior decision because, although broader, it "constitute[d] the rationale for the decision." 554 F.3d at 11. In contrast, the broader statement in Special Proceedings did not "constitute the rationale for the decision," but was a description of the holdings of a "majority of circuits." In fact, and as discussed below, had the court in Special Proceedings intended to reach access as defined here, it would have at least expressed some disapproval with the district court's sua sponte offer of access. Instead, the court in Special Proceedings cited the option with approval. 373 F.3d at 47.

-13-

situations than in others." United States v. John Doe, Inc. I, 481 U.S. 102, 112 (1987). We take the same approach.

We begin by discussing the significant interest a witness has in reviewing a transcript of his or her grand jury testimony. As the D.C. Circuit recognized, even witnesses who intend to testify truthfully have an interest in avoiding inaccuracies and inconsistencies that may subject them to a potential perjury prosecution. See Grand Jury, 490 F.3d at 988 (noting that 18 U.S.C. § 1623(a) provides for "inconsistent statements as [a] basis for a perjury conviction"). The interest in avoiding inaccuracies and inconsistencies increases significantly when a grand jury witness has to testify over multiple days, and thus has to prepare for upcoming testimony. Id.

Moreover, federal law "strongly reinforces" that interest. Id. A grand jury witness has a statutory right to recant, one that would be difficult to exercise without a review of the transcript. See 18 U.S.C. § 1623(d); see also Grand Jury, 490 F.3d at 988 ("A witness would have difficulty taking full advantage of the statutory recantation provision . . . without obtaining prompt access to transcripts of their own testimony."). In addition, the federal rules contemplate the disclosure of grand jury transcripts. See Fed. R. Crim. P. 6(e)(3)(E)(i) ("The court may authorize disclosure . . . of a grand jury matter . . . preliminary to or in connection with a judicial proceeding").

Finally, the government is subject to a higher burden of proof to establish perjury, which lessens the risk of perjury prosecution and, therefore, allows witnesses to be less evasive and more forthcoming in answering questions.[4]

We also stress that the interest a witness has in maintaining the accuracy of his or her testimony is not just personal to the witness. It is systemic, as both the courts and the government have a substantial interest in ensuring the accuracy of grand jury testimony.

With the witness's interests in mind, we consider the interests of the government, particularly how those interests are affected in the access context as compared to the copy context. As the D.C. Circuit points out, there are significant differences between the access and copy context with respect to witness intimidation. Specifically, "if a witness could routinely obtain a copy of the grand jury transcript . . . an interested party could in turn pressure the witness to obtain the transcript and to give it to that third party." Grand Jury, 490 F.3d at 989. Likewise a "witness's fear of being forced to disclose the transcript to a threatening third party could deter witnesses from testifying

_____

[4]The dissent only views these protections as "abundant . . . for all grand jury witnesses," and thus concludes that we "vastly overstate[] a witness's interest in access to prior grand jury testimony." (Dissent at 32-33). Instead, we view these protections as a recognition of the significant interest a witness has in maintaining the accuracy of his testimony, such that we do not overstate it, but simply take it into account.

-15-

freely and candidly in the first place." Id. Both of these concerns are alleviated significantly when only access is permitted. Unlike in the copy context, a witness granted only access could, in the face of intimidation, simply decline to reveal his testimony. See id. at 990 (noting that, in general, a grand jury witness could decline to discuss his or her testimony, and that this option "is not realistically affected by whether the witness can review the transcript at a secure location").[5] Moreover, because of this option, the witness will feel less inclined to withhold truthful testimony.

Although the D.C. Circuit did not address it, the access context also differs from the copy context with respect to grand jury secrecy. As both the D.C. Circuit and the district court in this case point out, a grand jury witness is under no obligation to maintain the secrecy of his or her testimony. To use the colorful

---

[5]The D.C. Circuit, in fact, found this difference so significant that it expressly reserved the issue of whether "the possibility of witness intimidation would justify denying copies of transcripts." Id. at 989-90.

The dissent contends that our conclusion is "naive," because "[t]he same people who would cajole a witness to obtain a copy of his testimony and reveal it would be able to use similar methods to coerce the witness into reviewing his testimony and reporting its contents." (Dissent at 30). However, the dissent does not fully take into account the evasive measures a witness can undertake if he only obtains access. After all, a witness, even after review, could be less than forthcoming about his testimony, and a third party would never know to cajole further. If the witness obtains a copy, however, no amount of evasion can hide his testimony, printed in black and white, from a determined third party.

example of the district court, a grand jury witness has the right to "put up that information on a billboard on the Mass. Pike." Thus, any concern with maintaining grand jury secrecy is already diminished in the grand jury witness context.[6] However, permitting access does not <u>exacerbate</u> the situation in the way making a copy available does. Unlike access, a copy can take on a life of its own, and, despite the efforts of a well-intentioned grand jury witness, a copy can float around and land in the wrong hands. Accordingly, the access context better maintains grand jury secrecy vis-a-vis the copy context.

Finally, although we have not had the occasion to address the issue, our decision in <u>Special Proceedings</u> lends some support to the distinction we make between granting access and granting a copy. There, we found that a deponent in a special investigation failed to articulate, let alone show, a particularized need for a copy of his deposition transcript, in part because "the district court took steps to accommodate any need [the witness] might have for the transcript by offering [the witness] and his counsel access to the deposition testimony as long as they agreed to keep the

---

[6]In fact, our precedent has failed to acknowledge the fact that a grand jury witness is not under any obligation to maintain grand jury secrecy. Some courts, most notably the D.C. Circuit, have viewed this fact as cutting in favor of witness access. Other courts have not. <u>See</u>, <u>e.g.</u>, <u>Bast</u> v. <u>United States</u>, 542 F.2d 893, 896 (4th Cir. 1976) (requiring a showing of particularized need, but "recogniz[ing] that Fed. R. Crim. P. 6 imposes no condition of secrecy on the witness.").

-17-

transcript confidential." 373 F.3d at 47.  Not only did we cite the option of access with approval, but we also indicated that a greater showing of need was required to move from the access context to the copy context.

We also recognize one other important interest not discussed by the D.C. Circuit but cited by the district court below, efficiency.  Articulating a lesser standard of particularized need with respect to access may increase the burdens on the government in grand jury proceedings.  However, we agree with the district court that "the benefit to the witness greatly outweighs the burden to the government."  As the D.C. Circuit noted, "the Federal Rules . . . mandate that grand jury proceedings be transcribed or taped," with such records being kept by the government.  Grand Jury, 490 F.3d at 986 (citing Fed. R. Crim. P. 6(e)(1)).  Thus, the cost of providing a transcript, which must be created anyway, and the slight delay caused by the review of the transcript would not impede an investigation significantly.  In fact, there is no evidence that the D.C. Circuit's more lenient rule has had any detrimental affect on grand jury investigations in that circuit.

We conclude by noting that our "less demanding" standard of particularized need does not apply to appellant's request to take notes.  Permitting notetaking blurs the line between the access and copy contexts, since one can imagine an appellant

transcribing his transcript and, in effect, creating a copy.  Thus, our requirement of a strong showing of particularized need applies equally to the notetaking context.[7]

For all of the above reasons, we find that the district court committed error in applying our precedent, which has solely involved requests for copies, to the appellant's request for access to a transcript of his grand jury testimony.

### B.  Showing of Particularized Need

Because the district court did not make any factual findings, but assumed as true the contentions in support of the appellant's request for access, we address whether appellant has made a showing of particularized need in light of the less demanding standard we articulated above.[8]

---

[7]Permitting the appellant's counsel to be present during the review, which the appellant also requests, is a closer call.  Thus, following the D.C. Circuit, we leave it up to the "sound discretion" of the district court on remand to determine whether appellant's counsel can be present.  See Grand Jury, 490 F.3d at 990.

[8]Because we hold that our former standard of "a strong showing of particularized need" still applies to the appellant's request to take notes, we still must review the district court's finding of no particularized need.  In our view, there was no abuse of discretion.  The district court, assuming the appellant's contentions as true, ultimately determined that the appellant's circumstances, which included the prosecutors' perjury warnings and the complexity of his testimony, were not sufficiently particularized to meet our standard.  Given that we have not found a sufficiently particularized need where only an "ill-defined" potential for perjury prosecution exists, see, e.g., Bianchi, 542 F.2d at 100, we do not see how the district court abused its discretion in denying notetaking.

-19-

The appellant argues that his need for access is sufficiently particularized to justify access for two reasons: (1) the threats of perjury prosecution given by the prosecutors during his examination, and (2) the complexity of the subject matter of his testimony, which involved "ancient activity."  We agree.

The appellant contends that his need was particularized because he was "threatened by . . . powerful authorities with life-wrecking perjury convictions and years of imprisonment."  Our own review of the grand jury transcript supports his claim.  In some instances the prosecutors made pointed comments to the appellant, asking in places if he "ha[d] a hearing problem" or whether he "speak[s] the English language."

Under our case law in the copy context, we have held that potential perjury prosecution alone does not arise to a particularized need.  In Bottari, for example, we found no particularized need due to potential perjury prosecution because that potential alone made "th[e] appellant . . . no different from any other witness who testifies before a grand jury, or elsewhere." 453 F.2d at 371.  Likewise in Bianchi, where the witness also had use immunity under 18 U.S.C. §§ 6002 and 6003, we found no

Moreover, the district court did not abuse its discretion in not making the transcript a part of the record, as the appellant claims.  In examining whether the appellant provided a strong showing of particularized need, the district court assumed as true the appellant's contentions in support of why his need was particularized.  Thus, the appellant would have received little benefit from having the district court review the transcript.

-20-

particularized need where the witness's "ill-defined fear" of a "'slight inconsistency' between past and present testimony [that] might subject him to perjury prosecution [wa]s unfounded." 542 F.2d at 100.

In this context, however, it is a close call whether the strongly worded, even abusive warnings of the prosecutors alone suffice to demonstrate a particularized need under our lesser standard for access. Some circuits have permitted access based upon such conduct, although they did so on other grounds. See, e.g., Bursey v. United States, 466 F.2d 1059, 1080 (9th Cir. 1972) (holding that "the concepts of fundamental fairness inherent in due process require that a grand jury witness be given some protection from the[] risks [of perjury] before he is compelled to answer repetitious questions"). However, we do not need to address the issue, because the threats of perjury prosecution, combined with the complexity of the appellant's testimony, sufficiently establishes a particularized need. As the witness attested to, and as the grand jury transcript and exhibits bear out, the subject matter of his testimony was significantly complex, involving not only complex technical material, but also events and dates occurring nearly a decade ago. Thus, any concerns with inconsistencies in his testimony (concerns which were repeatedly inflamed by the prosecutors) were magnified by the potential traps posed by the highly technical and ancient nature of his testimony.

-21-

Accordingly, the threats of perjury prosecution, combined with the complexity of the witness's testimony, supplies the necessary particularized need to permit access.

We conclude by discussing our application of this lesser demand for "particularized need" going forward. In this case we have found such a need satisfied given the abusive warnings of the prosecutors during testimony and the complexity of the appellant's testimony. We emphasize that, based upon our review of the record, the warnings were not only strongly worded, but were also buttressed by repetitious questions and insulting language. Moreover, the subject matter of the testimony concerned complex, nearly decade-old technical material that was <u>integral</u> to the examination.[9]

---

[9]The dissent disagrees, and contends that our rule "is likely satisfied in many -- if not most -- grand jury investigations." (Dissent at 34). The dissent misstates the basis of our finding for a particularized need. Prosecutor's warnings combined with testimony only "involv[ing] complex subjects that occurred some time in the past" are <u>not</u> sufficient to establish a particularized need under our lower standard, as the dissent suggests. (See <u>id.</u> at 35). Something more is required, and we articulated above what that more was in this case.

Moreover, we disagree with the dissent's characterization of the warnings made during the examination. The dissent quotes four warnings during the examination to show that they were innocuous, ignoring other warnings as "infrequent[] and inconsequential[]." (Dissent at 39-41). It is the third quoted warning on which we disagree. The dissent seeks to explain that the warning is justifiably strongly worded because the appellant was being "evasive." (<u>Id.</u> at 40). However, we read the exchange as supporting our view that the examination was highly technical, as the government immediately stated after giving the warning that "Okay. So stop playing games with us. This jury is composed of a

-22-

We are also cognizant of the effect the application of our rule will have on grand jury proceedings, since we do not want to "saddle a grand jury with minitrials and preliminary showings [that] would assuredly impede its investigation." United States v. Dionisio, 410 U.S. 1, 17 (1973). However, the lesser standard of particularized need we apply here would not impose undue hardship on grand jury investigations. A district court in its discretion can utilize procedures, such as the expedited hearing the district court conducted in this case, to minimize any undue effect on the grand jury investigation. Moreover, although we had the advantage of reviewing the transcript in this case, nothing we say here requires the government to submit one in response to a motion for access. To the extent that the transcript is not available, a grand jury witness can testify (or make a proffer) in camera as to his or her examination to support his or her claim, with the government having an opportunity to rebut.[10] Finally, to the extent

---

group of laymen. . . . so talk to us like we're regular people and stop playing word games with us." Moreover, the dissent dismisses the other warnings given during this exchange, such as "Now I'm telling you to answer the questions straightforwardly and truthfully," followed shortly thereafter by "Okay. Can you answer the question straightforwardly?," and still later by "Again, answer the question that's asked of you. Answer is directly. Answer it truthfully. All right?" and, after a five minute break, "I remind you that you're still under oath." From here, the government's warnings took an abusive turn: "Please, again, do you have a hearing problem?" and "And you speak the English language, that's your first language, right?"

[10]Thus, we disagree with the dissent that under our rule "a district court will abuse its discretion if it fails to review the

-23-

that a grand jury witness games the system to establish a particularized need, a district court can take evidence of that into account.  A witness cannot establish a need, let alone a particularized one, if the purported need was self-induced.[11]

### III.  Conclusion

For the foregoing reasons, we reverse the district court's finding of contempt, and, on remand, direct the district court to permit the appellant access to a transcript of his grand jury testimony consistent with this opinion.

**Reversed**.

**"Dissenting opinion follows"**

---

transcript."  (Dissent at 36 n.23).

[11]The dissent claims that we "too quickly dismisses the witness's obstreperous conduct."  (Dissent at 41 n.28).  Our own review of the transcript does not suggest to us that the appellant was being obstreperous during the examination given the highly technical nature of the questions asked.  Moreover, the appellant has proceeded in good faith throughout the course of these proceedings.  As the district court found in staying its contempt order pending appeal, the appellant's claims were "not frivolous" and that the appellant was not "being contumacious in the way [of an] ordinary grand jury witness, who simply refuses to testify without good reason."

-24-

**HOWARD**, **Circuit Judge**, **dissenting.** Neither the Federal Rules of Criminal Procedure nor Supreme Court precedent specifically address the circumstances in which a non-defendant grand jury witness may access his testimony, regardless of the format of such access. The panel majority adopts an approach based on the reasoning and rationale of a recent D.C. Circuit opinion, which permits relatively unfettered access even for non-defendant witnesses. Were we writing on a blank slate, I believe this approach would be problematic. But we are not writing on a blank slate; an unbroken line of our cases going back over thirty years forecloses the majority's result. Thus, because the majority's conclusion is contrary to our precedent, unwise as a matter of policy, and insupportable on this record, I respectfully dissent.

## I.

Since at least 1972, we have made clear that grand jury witnesses have no general right of access to transcripts of their prior grand jury testimony. See In Re Bottari, 453 F.2d 370 (1st Cir. 1972). We have since elaborated on this rule, making just as clear that fear of future perjury prosecution cannot constitute a cognizable reason for a witness to have access to a transcript of his testimony. See In Re Bianchi, 542 F.2d 98, 100 (1st Cir. 1976) (citing United States v. Chevoor, 526 F.2d 178, 181 (1st Cir. 1975)). We later confirmed our adherence to the majority rule among the circuits that a "non-defendant witness seeking access to

-25-

his own [grand jury] transcript must make a 'strong showing of particularized need' for such disclosure."[12]   In Re Special Proceedings, 373 F.3d 37, 47 (1st Cir. 2004) (quoting In Re Grand Jury Subpoena, 72 F.3d 271, 274 (2d Cir. 1995)) (emphases added).

It is true that during the course of In Re Special Proceedings, we noted that the district court afforded the witness seeking access to his testimony the opportunity to review it, so long as the witness kept the information confidential. Id. But that comment was made in the context of explaining why the witness failed to make the requisite "strong showing of particularized need." The majority attempts to treat this summary comment as lending "some support to the distinction" it draws "between granting access and granting a copy." Maj. Op. at 17; see also Maj. Op. at 12-13 n.3. But this short aside did not (and indeed could not) change the ratio decidendi of our decision in In Re Special Proceedings, which requires that even a non-defendant witness make a "strong showing of particularized need" for "access" to his own grand jury testimony.

-------

[12]The panel majority attempts to avoid the full scope of this holding by highlighting the fact that In Re Special Proceedings articulated this result as the holding of "a majority of circuits," and that our rule is "similar." Maj. Op. at 12-13 n.3 (quoting In Re Special Proceedings, 373 F.3d at 47). But the majority neglects the next sentence of In Re Special Proceedings, which makes clear that we too subscribe to the rule in the majority of circuits: "[a] few circuits take a contrary view . . . but are at odds with Bianchi." 373 F.3d at 47. It is therefore clear that a fair reading of In Re Special Proceedings cannot limit its reach merely to copies.

Where, as here, the language of a prior panel decision is perhaps broader than the precise controversy at issue in that prior decision, we still give effect to the language of the prior panel decision. Awuah v. Coverall, N. Am., Inc., 554 F.3d 7, 11 (1st Cir. 2009). Absent contravening authority from this court sitting en banc or the Supreme Court, we must continue to honor the In Re Special Proceedings doctrine. Id.; United States v. Holloway, 499 F.3d 114, 118 (1st Cir. 2007).[13]

Thus, our case law does not permit the majority's conclusion that a less demanding standard of particularized need is appropriate where a witness seeks access to his prior grand jury testimony. The majority attempts to elide decades of case law by drawing a distinction between access to prior testimony and the availability of copies of prior testimony. But, for the reasons

---

[13]The majority's second attempt to reconcile its holding with our precedent is equally unavailing. As explained in note 1, the ratio decidendi of In Re Special Proceedings extends to access and does not end with the provision of copies. Consequently, both Awuah and Holloway require that the panel use the "strong showing of particularized need" standard for access as well as copies.

described above, unlike in the D.C. Circuit,[14] our precedent does not countenance such a distinction.[15]

## II.

Even if it were permissible for us to sweep away our precedent and to create an entirely new rule regarding a non-defendant witness's right to access his grand jury testimony, the majority's chosen rule permitting access based on a "less demanding requirement of particularized need" is unwise. First, in creating this less demanding standard, the majority fails to give due weight to important interests of grand jury secrecy and preventing witness intimidation, while at the same time, the majority overemphasizes a witness's interest in access to his testimony. Second, the majority's preferred approach will improvidently hamstring the operation of grand juries.

---

[14]The D.C. Circuit case, In Re Grand Jury, 490 F.3d 978 (D.C. Cir. 2007), is factually distinguishable from the case at bar, and the majority has significantly expanded this precedent in order for its rule to encompass cases such as the appellant's. Unlike in In Re Grand Jury, where witnesses without immunity testified as many as three times, with months between such testimony, the appellant in this case had immunity. See id. at 980. Moreover, the appellant's testimony was originally continued for one week, and was later continued for another two weeks to accommodate appellant's counsel. All other delays in this case have resulted from the appellant's protracted efforts to gain access to his prior testimony.

[15]Our circuit's view of the law finds significant support in the "majority of appellate decisions dealing with this issue." In Re Grand Jury Subpoena, 72 F.3d at 274-75 (citing Davis v. United States, 641 A.2d 484, 490-91 (D.C. App. 1994); Bast v. United States, 542 F.2d 893, 895-96 (4th Cir. 1976); In Re Bianchi, 542 F.2d 98; In Re Bottari, 450 F.2d 370).

**A.**

**1.**

The majority has identified three interests militating against witness access to grand jury testimony,[16] but has not given full weight to those interests. The majority dismisses the notion that grand jury secrecy is an important interest in this context because grand jury witnesses have no obligation to keep their testimony secret. Although the majority is correct that a witness is under no obligation to keep his testimony secret, Maj. Op. at 10 (citing In Re Grand Jury, 490 F.3d at 988-89), it does not follow that permitting a witness access to his own testimony "does not exacerbate" the threat to grand jury secrecy. Maj. Op. at 17 (emphasis in original). On the contrary, a witness -- even if he is denied the ability to review his testimony with counsel -- will now have an additional opportunity to think about his testimony and potentially disclose it.[17] Moreover, we can expect that a witness

---

[16]Because of the profound threat the majority's proposed rule poses to the efficiency of grand juries, I discuss this interest in Part II.B, infra.

[17]The majority leaves open the question of whether the appellant is entitled to have his counsel review the transcript. Maj. Op. at 19 n.7. It suffices here to note the district court's ruling on remand from the D.C. Circuit, in which the court held that "the expertise of legal counsel is not necessary for the [witness] to assess whether the transcripts reflect inconsistencies or falsehoods that place [the witness] at risk for a perjury prosecution or warrant recantation . . . ." In Re Grand Jury Proceeding, 520 F. Supp. 2d 61, 64 (D.D.C. 2007). Moreover, as the district court further noted, since attorneys are not permitted in the grand jury room when a witness testifies, it would be anomalous

-29-

will be likely to remember a significantly greater portion of his testimony during a private review than while undergoing questioning before the grand jury, making any subsequent disclosure more problematic from the standpoint of the important interest in secrecy. Thus, as a practical matter, the majority's rule will have an adverse impact on grand jury secrecy.

Similarly, witness intimidation will almost certainly increase under this new standard. The majority asserts that "a witness granted only access could, in the face of intimidation, simply decline to reveal his testimony." Maj. Op. at 16 (citing In Re Grand Jury, 490 F.3d at 990). Respectfully, this assertion is naive. The same people who would cajole a witness to obtain a copy of his testimony and reveal it would be able to use similar methods to coerce the witness into reviewing his testimony and reporting its contents. The majority's claim that a witness can undertake "evasive measures" to avoid commenting on a recollection refreshed by a lengthy review of the witness's prior testimony is unpersuasive. See Maj. Op. at 16 n.5. As the majority correctly notes, such evasive measures are unlikely to succeed with respect to the existence of a transcript copy; these measures are similarly likely to fail when determined individuals demand a witness divulge the contents of his testimony. Given that most witnesses will have

to permit an attorney to be present during a review of the transcript. Id. at 64 n.4.

better recollections of their testimony after the opportunity to review it in private, a fact that will not elude those seeking additional information, the rule we are now adopting will exacerbate the threat of witness intimidation.

**2.**

By contrast, again relying on the D.C. Circuit's approach, the majority overemphasizes a witness's interest in access to his grand jury testimony. The guiding light in the majority's balancing is a witness's supposed need to ensure that past testimony is accurate, presumably to innoculate him from criminal charges of providing false declarations to the grand jury, with secondary consideration for a witness's need to prepare for future testimony where such testimony is spread over several days. Maj. Op. at 14 (citing In Re Grand Jury, 490 F.3d at 988); see also 18 U.S.C. § 1623.[18]  Though well-intentioned, the majority's solicitude for witnesses in this regard is misplaced; although the majority claims that "even witnesses who intend to testify truthfully have an interest in avoiding inaccuracies and inconsistencies that may subject them to potential perjury prosecution," Maj. Op. at 14, federal law already provides ample

---

[18]The most obvious and greatest antidote to this concern, of course, is that the witness "should testify truthfully in the first instance." In Re Grand Jury Proceedings, 520 F. Supp. 2d at 64.

protection to such witnesses, which should serve to obviate the majority's concern over the plight of these witnesses.[19]

The law already provides abundant protections for all grand jury witnesses. Testimony is punishable only when the government proves beyond a reasonable doubt that it is false, made knowingly, and is material to the work of the grand jury. 18 U.S.C. § 1623(a); United States v. Silveira, 426 F.3d 514, 518-19 (1st Cir. 2005). Similarly, the relevant statute provides significant protection to those charged with making inconsistent statements. Such statements are actionable only if the government proves beyond a reasonable doubt that they were made (1) knowingly and (2) they are inconsistent to the degree that one of them is necessarily false. 18 U.S.C. § 1623(c). Even then, it is an affirmative defense that the defendant "at the time he made each declaration believed the declaration was true." Id. Furthermore, in certain circumstances, witnesses have the right to recant any false declarations. 18 U.S.C. § 1623(d).[20] As courts have

---

[19]In addition, as a further argument for disclosure, the majority correctly notes that in certain circumstances, the Federal Rules of Criminal Procedure contemplate disclosure of grand jury transcripts. Maj. Op. at 14 (citing Fed. R. Crim. P. 6(e)(3)(E)(i)). But the majority neglects to acknowledge that such disclosure is only permitted on a strong showing of particularized need, see Douglas Oil Co. of Cal. v. Petrol Stops Nw., 441 U.S. 221 (1979), which the majority concedes is not met in this case. Maj. Op. at 19 n.8. Thus, the Federal Rules of Criminal Procedure provide no reason to tip the balance in favor of access.

[20]The majority's conclusion that it "would be difficult to exercise [the statutory right to recant] without a review of the transcript"

-32-

recognized, these are copious protections for those who fear prosecution for failing to provide less than perfectly accurate testimony to the grand jury. See In Re Grand Jury Proceedings, 520 F. Supp. 2d at 64 (citing Doe v. United States, 72 F.3d 271 (2d Cir. 1995)).

The majority acknowledges the robust protections against unwarranted perjury charges afforded grand jury witnesses, see Maj. Op. at 14-15, but nevertheless (erroneously in my view) concludes that "federal law strongly reinforces" a witness's interest in access. Maj. Op. at 14 (internal quotation marks omitted). Rather, the substantial protections available to grand jury witnesses militate in favor of affording less weight to the witness's interest in obtaining access to grand jury testimony. Consequently, the majority has vastly overstated a witness's interest in access to prior grand jury testimony, and as a result,

does not follow. Maj. Op. at 14. As explained above, because other provisions of federal law provide witnesses with significant protections, recantation is not needed to resolve minor inconsistencies or slight errors. A witness will have a better memory of the major points of his testimony, and after testifying, in consultation with counsel, he will be able to exercise his right to recant without a detailed review of the record of his testimony. Although we require a witness attempting to recant admit that his testimony is false, we have never required any greater level of detail in order to permit recantation. E.g., United States v. Scivola, 766 F.2d 37, 43 (1st Cir. 1985); United States v. Goguen, 723 F.2d 1012, 1018 (1st Cir. 1983). The majority's continued insistence on transcript access for this purpose exalts recantation above these other protections available to grand jury witnesses, and unnecessarily burdens the efficiency of grand jury investigations.

has created a new rule that will needlessly and unduly interfere with the efficient operation of grand juries, contrary to the teachings of the Supreme Court.

**B.**

It is axiomatic that grand juries are integral to the "fair and expeditious administration of the criminal laws." United States v. Dionisio, 410 U.S. 1, 17 (1973) (citations omitted). Their role is to investigate potential criminal violations "independently of either prosecuting attorney or judge," and they are therefore imbued with "necessarily broad" investigative powers. See id. at 13, 17 (citing Branzburg v. Hayes, 408 U.S. 665, 688 (1972)). The Supreme Court has therefore long held that grand jury proceedings should be free of procedural delays and that "[a]ny holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in fair and expeditious administration of the criminal laws." Id. at 17; see also United States v. R. Enters., Inc., 498 U.S. 292, 300-01 (1991); United States v. Calandra, 414 U.S. 338, 350 (1974); Stern v. United States Dist. Court, 214 F.3d 4, 16-17 (1st Cir. 2000).

The majority's approach of permitting witnesses to access their testimony based on a lesser standard of particularized need that is likely satisfied in many -- if not most -- grand jury investigations threatens to unleash precisely the mischief that the

Supreme Court has warned against. The majority believes that the combination of a prosecutor's use of perjury warnings during questioning of a witness and the fact that a witness's testimony involves complex subjects that occurred some time in the past is sufficient to meet its lower threshold of particularized need. Maj. Op. at 20, 22. But all grand jury investigations are necessarily retrospective, and they frequently focus on complex matters.[21] Moreover, through evasive and unresponsive testimony, any witness could elicit perjury warnings from those questioning him.[22] Thus, under the majority's standard, any witness who

---

[21]The majority claims "something more" is required to meet its diminished standard, Maj. Op. at 22 n.9, but its opinion refers only to perjury warnings, which are appropriate, necessary, and encouraged in our case law, see infra note 22, the fact that the subject matter involved technical material, and that some events occurred less than ten years in the past. But these are common circumstances and it is likely that many -- if not most -- grand jury investigations will be encompassed in the ambit of the majority's new rule.

[22]The majority's decision to consider perjury warnings in determining whether a witness has satisfied a less demanding standard will inevitably chill prosecutors' proper use of perjury warnings, which is a disservice to prosecutors, witnesses, and the grand jury's quest for the truth. The record in this case reveals that the prosecutors' perjury warnings were limited and appropriate. See infra pp. 39-41.

These warnings are particularly appropriate in light of our previous expressions of strong displeasure with prosecutors in this circuit who attempt to skirt warnings to grand jury witnesses. See, e.g., United States v. Pancheco-Ortiz, 889 F.2d 301 (1st Cir. 1989); United States v. Babb, 807 F.3d 272 (1st Cir. 1986). In drawing an adverse inference from four reasonable and appropriate perjury warnings, we are acting at cross-purposes with our firm guidance regarding warnings in grand juries, and unnecessarily burdening prosecutors who legitimately offer appropriate perjury warnings.

received a perjury warning and testified over several days in a complex case about events occurring in the past, can advance at least a strong claim for access to his prior testimony, thereby creating precisely the kind of procedural delay the Supreme Court has warned against.

The prosecutors responsible for coordinating the grand jury investigation will now have to defend these claims, which the district courts will need to adjudicate.[23]  Handling these tasks will inevitably distract prosecutors and judges while delaying and sometimes even derailing important grand jury investigations.  This problem is only compounded by the fact that our lenient new test will give witnesses every incentive to engage in obstreperous

---

[23]The majority claims that its opinion does not require a district court to review the transcript of grand jury proceedings in all cases, Maj. Op. at 23 & n.10, but, under the logic of the majority's analysis, the district court necessarily must review the transcript to determine whether the witness can satisfy the "less demanding requirement of particularized need."  Without such a review, it is difficult to imagine how a district court can determine whether perjury warnings were sufficiently numerous and abusive or a witness's testimony sufficiently complex to justify relief.

The majority claims that other procedures, such as witness testimony or proffers and government rebuttal, might allow the district court to determine whether a witness has satisfied  the majority's lower standard. Maj. Op. at 23.  But the district court will be unable to accept as true a witness's statements in this posture, see Maj. Op. at 19-20 n.8, and as this case demonstrates, witnesses and prosecutors will disagree sharply over what transpired before the grand jury. Consequently, as a practical matter, a district court will abuse its discretion if it fails to review the transcript of a witness's grand jury testimony to determine whether the less demanding requirement of particularized need has been satisfied.

conduct in an effort to cause their testimony to continue over to a second day in the hope of gaining access to a transcript.[24]

This case is proof that all but the most stringent standards of witness access will create slippage that threatens to undermine the orderly operation of grand juries. As these proceedings demonstrate, witnesses, advocates, and even judges can and do disagree regarding a witness's evasiveness and obstreperousness, as well as the propriety of prosecutors' questioning. Because such disagreements have the potential to stymie the efficient operation of grand juries and the interests of witnesses are protected under other provisions of federal law, the Supreme Court and our own precedents require that grand juries be permitted to pursue their work without the threat of these types of proceedings.

Moreover, the break in the appellant's testimony, occasioned by the need to hear another witness, would have been about one week in length had the appellant not delayed it further first to accommodate his counsel, and then again, to wage this

---

[24]The majority suggests that "[a] witness cannot establish a need, let alone a particularized one, if the purported need was self-induced." Maj. Op. at 24. The problem, of course, is that the need in this case was self-induced. The witness responded to straightforward questions with evasive and sometimes misleading responses, which the majority fails to acknowledge. See infra note 27. It was these responses to questions (and the prosecutors' sensible attempts to follow-up) rather than any particularly technical details of the testimony that occasioned the witness's unease in this case.

protracted battle over access. Indeed, a transcript of the appellant's testimony was not available until approximately one month after his initial testimony. The majority claims that such a one month delay is "slight" and will not "impede an investigation significantly," Maj. Op. at 18, but I simply cannot agree. Grand juries are normally limited to eighteen month terms, Fed. R. Crim. P. 6(g), and a delay of one month is hardly slight or insignificant. Moreover, the majority's ruling leaves open the strong likelihood that there will be multiple witnesses appearing before a single grand jury who may be able to assert a right to review grand jury transcripts, which will further degrade a grand jury's ability to execute its functions in an expeditious manner.[25] Thus, as this case also demonstrates, the majority's rule has significant potential needlessly to saddle grand jury proceedings with delay and unnecessarily encrust them with precisely the sorts of procedural requirements that the Supreme Court has warned against.

### III.

The facts of this case only confirm the adverse effect the majority's new standard will have on the efficiency and

---

[25]I can take no comfort in the majority's observation that "there is no evidence that the D.C. Circuit's more lenient rule has had any detrimental [e]ffect on grand jury investigations in that circuit," Maj. Op. at 18, because no such evidence was offered by either party or requested by this court, and in view of the secrecy that properly shrouds grand jury proceedings, such evidence should not be readily discernible.

expeditiousness of the grand jury process.  The majority claims that threats of perjury prosecution and the complexity of testimony jointly suffice to meet its lower threshold.  Maj. Op. at 20, 22. But the record reflects only four perjury warnings and no particularly outrageous conduct on the part of the prosecutors, nor does it bear out the majority's claim of complexity.

During the course of three hours and fifteen minutes of testimony, the record reveals only four perjury warnings.  The first was given at the beginning of the witness's testimony, reminding him that the use immunity order does not extend to perjury or obstruction of justice:

> PROSECUTOR: [Y]ou also understand that the order [granting use immunity] does not protect you if you lie, mislead or obstruct this grand jury's investigation, do you understand that?
>
> WITNESS: I do understand that yes.[26]

The second warning was given when a different prosecutor first began questioning the witness:

> PROSECUTOR:  All right.  Well you know [name redacted] I'm going to caution you, and [the other prosecutor] told you this earlier. Despite the fact that you have received immunity today, if your testimony is designed to mislead this grand jury or is evasive or equivocal, you can be charged with obstruction of justice, do you understand that?

---

[26]Ofttimes, a prosecutor will have more than one purpose for this introductory perjury warning, including the buttressing of the witness's anticipated testimony by suggesting -- through the perjury warning -- that the immunized witness has every incentive to tell the truth.

WITNESS:  I do understand that.

The third perjury warning was given after the witness offered a series of evasive answers to straightforward questions:

> PROSECUTOR:  No, no.  Look.  Look, [name of witness redacted], again let's make a -- you're here to tell the truth.  Okay?  This isn't a game.  All right?  You're not here to defend [third party] or defend your own actions.  You have immunity.  The only way you get into trouble here is if you lie or mislead this grand jury.  Do you understand this concept?
>
> WITNESS:  I do.[27]

The fourth and final perjury warning was given purely prophylactically after a two hour lunch break:

---

[27]The majority relies on a prosecutor's admonition that the lawyers presenting and the grand jurors hearing the case were "laymen" to conclude that the witness's answers were not evasive or obstreperous but rather "highly technical."  Maj. Op. at 22 n.9. What the majority overlooks is that the prosecutors in this case were attempting to elicit from the witness basic facts regarding whether a third party was warned of a particular danger, and if so, when and in what level of detail.  The witness claimed that such a warning was provided at a meeting at which he was present, but when pressed, conceded that the warning was not given at the meeting. Unlike the details of a warning, which may be technical, the fact of whether a warning was given, and if given, its subject is not normally, and in this case was not "highly technical."  The witness's failure to address this question in a straightforward or even consistent manner is one of many examples of his evasiveness.

Furthermore, I note that the witness requested and was granted the opportunity to consult with counsel shortly after the exchange the majority describes.  This further reinforces my conclusion that the prosecutors were not behaving abusively or attempting to overbear the witness.  Instead, the prosecutors respected the witness's rights and were only interested in eliciting the truth, which the witness was obfuscating considerably.

PROSECUTOR: [Name redacted], just to remind you, can you please acknowledge that you understand that you are still under oath?

WITNESS: I do understand that, yes.

Other than these warnings reminding the witness that use immunity does not extend to perjury or obstruction of justice, the words "perjury," "lie," "obstruct," or other similar words and phrases appear in the transcript only infrequently and inconsequentially. The record further clarifies that the few times the prosecutors acted in a way that could be characterized as confrontational, see Maj. Op. at 20, 22 n.9, the witness was providing obviously evasive and non-responsive answers.[28]

---

[28]The majority too quickly dismisses the witness's obstreperous conduct and his consistently unresponsive and insufficient answers to legitimate questions, and the majority further fails to acknowledge the obvious systemic harm that flows from such conduct. Maj. Op. at 24 n.11. This omission is puzzling in light of the majority's concern for systemic benefits that come from access. See Maj. Op. at 15. When one considers the appellant's conduct in this case, it is clear that any hardship that he has experienced is "self-induced," that prosecutors provided him with warnings in compliance with our case law, see supra note 22, and that the majority's new rule will grant witnesses wide latitude to avoid cooperating with grand juries and prosecutors searching for the truth.

Finally, the fact that I disagree so sharply with the majority over what transpired in this case and the severity of the prosecutors' perjury warnings reaffirms the wisdom of our decisions in Bottari, Bianchi, and Special Proceedings -- consistent with Supreme Court precedent -- to avoid such disputes altogether by applying a rigorous "strong showing of particularized need" standard for all access to grand jury transcripts, while relying on the other substantial protections found in federal law to protect the interests of witnesses.

In addition, it is important to note that although some of the substantive subject matter in this case may be technical, for the most part, the prosecutors did not dwell on the technical complexities. It is also worth noting that the witness admitted to having reviewed many of the documents pertinent to his testimony with his attorney in the days and weeks prior to his testimony. This preparation should substantially ameliorate the majority's concern regarding both the technical and the "ancient" nature of the testimony. Moreover, the witness was given the opportunity to consult with counsel, who was available outside of the grand jury room, and the record reflects that the witness consulted with counsel at least twice, which should further palliate concerns that anything unfair occurred here.

## IV.

Because I find that the majority's newly invented lesser standard of need is inconsistent with our precedent, significantly detracts from important interests of grand jury secrecy and preventing witness intimidation, substantially overemphasizes the interests of a witness, encrusts grand jury proceedings with needless procedural complications, and is insupportable on this record, I respectfully dissent.